**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| PHILIPS MEDICAL SYSTEMS (CLEVELAND), INC.; PHILIPS INDIA LTD.; PHILIPS MEDICAL SYSTEMS TECHNOLOGIES LTD.; KONINKLIJKE PHILIPS N.V.; and PHILIPS NORTH AMERICA LLC, | §<br>§<br>§<br>§<br>§<br>§<br>§ |
| | Civil No: 1:17-CV-03425 |
| | Judge Robert M. Dow, Jr. |
| Plaintiffs, | § JURY TRIAL DEMANDED |
| v. | §<br>§ |
| ZETTA MEDICAL TECHNOLOGIES, LLC; and RONALD J. DUNCAN, | §<br>§<br>§ |
| Defendants. | §<br>§<br>§ |

## <u>AMENDED COMPLAINT</u>

Plaintiffs Philips Medical Systems (Cleveland), Inc., Philips India Ltd., Philips Medical Systems Technologies Ltd., Koninklijke Philips N.V., and Philips North America LLC (collectively, "Philips" or "Plaintiffs"), by and through their undersigned counsel, hereby bring the following Amended Complaint against Zetta Medical Technologies, LLC ("Zetta") and Ronald J. Duncan ("Mr. Duncan") (collectively, "Defendants"), and now plead as follows:

## <u>Overview</u>

1.     As set forth more fully below:  Plaintiffs are collectively, *inter alia*, involved in the business of developing, manufacturing, selling, supporting, maintaining, and servicing medical imaging systems used at hospitals and medical centers, including the proprietary

hardware and software that is necessary—and/or may be used—to operate, service, and repair such systems.

2.      Defendant Zetta Medical Technologies, LLC also provides, *inter alia*, maintenance and support services for certain of such medical systems; and Defendant Ronald J. Duncan is a former employee of Philips North America LLC who is or was employed by Zetta Medical Technologies, LLC as a service technician or similar position.

3.      Plaintiffs' medical imaging systems include Plaintiffs' copyrighted and proprietary intellectual property, and proprietary trade secrets, in the form, *inter alia*, of computer software and related process and information.

4.      Plaintiffs have filed this civil action against Defendants because, as set forth below, Defendants have engaged in a pattern of improper and unauthorized conduct that includes, *inter alia*, intentional circumvention of—and resulting, improper and unauthorized access to and use of—the copyrighted and proprietary intellectual property, and proprietary trade secrets, embodied in Plaintiffs' computer software.

5.      Based upon Defendants' conduct and actions and the resulting damages suffered by Plaintiffs, Plaintiffs assert claims in this Complaint for: violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; copyright infringement, 17 U.S.C. § 101, *et seq.*, and 28 U.S.C. § 1338(a); violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201; violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836; misappropriation of trade secrets and violations of the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1, *et seq.*; breach of contract (Defendant Mr. Duncan); tortious interference with contract (Defendant Zetta); and unfair competition.

6.     Plaintiffs additionally seek a permanent injunction preventing Defendants from further engaging in the improper and unauthorized access to, and use of, Plaintiffs' software and other trade secrets.

**Parties**

7.     Plaintiff Philips Medical Systems (Cleveland), Inc. is a California corporation with a principal place of business in Cleveland, Ohio.

8.     Plaintiff Philips India Ltd is a foreign corporation with a principal place of business in Bangalore, India.

9.     Plaintiff Philips Medical Systems Technologies Ltd is a foreign corporation with a principal place of business in Haifa, Israel.

10.     Plaintiff Koninklijke Philips N.V. is a foreign corporation with a principal place of business in Amsterdam, Netherlands.

11.     Plaintiff Philips North America LLC is a Delaware LLC, formerly known and doing business as Philips North America Corporation (a Delaware Corporation), with a principal place of business in Andover, Massachusetts.

12.     The five named plaintiffs, identified in the preceding paragraphs, are collectively referred to in this Complaint as "Philips" or "Plaintiffs."

13.     The five named plaintiffs—Philips—are collectively in the business, *inter alia*, of developing, manufacturing, selling, supporting, maintaining, and servicing Philips' medical imaging systems, including the proprietary hardware and software and related trade secrets that are necessary—and/or may be used—to operate, service, and repair such systems.

14. Defendant Zetta Medical Technologies, LLC ("Zetta") is an Illinois corporation with its principal place of business in Lake Zurich, Illinois. Zetta, *inter alia*, is in the business of providing some maintenance and support services for certain medical imaging systems that include Philips x-ray machines, CT scanners, and other devices used at hospitals and medical centers.

15. Defendant Ronald J. Duncan ("Mr. Duncan") is an individual and is, upon information and belief, a citizen of Virginia. Mr. Duncan, *inter alia*, was and/or is a Zetta employee who works as a service technician providing maintenance and support services for systems that include Philips x-ray machines, CT scanners, and other devices used at hospitals and medical centers.

16. Zetta and Mr. Duncan are collectively referred to in the Complaint as "Defendants."

<u>**Jurisdiction and Venue**</u>

17. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity exists between the parties.

18. This Court additionally has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) because claims asserted in this case arise under: 18 U.S.C. § 1030 (Computer Fraud and Abuse Act); 28 U.S.C. § 1338(a) (any act of Congress relating to patents, copyrights, and trademarks); 17 U.S.C. § 1201 (Digital Millennium Copyright Act); 18 U.S.C.§ 1836 (Defend Trade Secrets Act); and 28 U.S.C. § 1369 (supplemental jurisdiction) and the doctrines of ancillary and pendant jurisdiction.

19.     This Court has personal jurisdiction over Zetta because it is a citizen of Illinois with its principal place of business in Illinois.

20.     This Court has personal jurisdiction over Mr. Duncan because:  Mr. Duncan had and has purposeful and ongoing contacts with Zetta in connection with his employment with, and work for, Zetta; and, in addition to and beyond connections based within the scope of any of Mr. Duncan's legitimate employment activities with Zetta, Mr. Duncan has separately engaged in improper conduct for his personal benefit, outside the scope of his employment, giving rise to the claims below, including but not limited to violating contractual agreements with Philips for the benefit of both himself and his Illinois-based employer and engaging in other conduct outside the scope of legitimate employment activities for the benefit of both himself and his Illinois-based employer.  Mr. Duncan's conduct included, but was not limited to, actively working and cooperating with Zetta in Illinois so that both, including Mr. Duncan individually and personally, would reap or attempt to reap benefits from the contractual breaches and tortious and other conduct set forth herein.

21.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because: Defendant Zetta resides in this judicial district; Mr. Duncan is an employee of Zetta; Mr. Duncan has also engaged in activities outside the scope of his legitimate employment, for his personal benefit, that involve working with Zetta in Illinois and in this judicial district; and a substantial part of the conduct, events, or omissions giving rise to Philips' claims occurred in this judicial district and/or had and have connections to this judicial district.

**Facts and Allegations**

22.     Philips reasserts, re-alleges, and incorporates by reference the allegations in the above-stated paragraphs of this Complaint as if fully set forth herein under Facts and Allegations.

**~ Background Concerning Philips and Philips' Systems ~**

23.     Philips develops, manufactures, and sells,--and subsequently supports, maintains, and services—medical imaging systems that are used at hospitals and medical centers ("Systems"), including developing, manufacturing, selling, supporting, maintaining, and servicing the proprietary hardware and software and related trade secrets that are necessary—and/or may be used—to operate, service, and repair the Systems.  The Systems include, but are not limited to, imaging devices such as CT and PET scanners, x-ray machines, MR scanners, and nuclear medicine scanners.

24.     The foregoing Systems specifically include, but are not limited to:  series of CT and/or PET scanners known as the "Brilliance," "Ingenuity," "Vereos," "IQon," "iCT," "Big Bore," and "MX16" models; a series of x-ray machines known as the "Allura" models; a series of MR scanners known as the "Ingenia" models; and a series of nuclear medicine and/or other scanners known as the "BrightView" models.

25.     The Brilliance models are used, *inter alia*, for primary care, for clinical imaging in specialties requiring CT scans, and for general imaging.

26.     The Systems are complex pieces of medical equipment that rely heavily on accompanying, customized software that Philips owns and/or has developed, the specific versions and functionalities of which can vary among Systems.  This proprietary software is

referred to generally as Philips customer service intellectual property, and is referred to in this Complaint as "Philips CSIP."

27.    Philips CSIP software provides authorized users with proprietary tools that assist with the maintenance and servicing, diagnostic, calibration, and other functionalities of Systems and those tools are provided by Philips only to those authorized to access such tools within Philips CSIP.

28.    As set forth in more detail below, Philips protects Philips CSIP software against unauthorized access or use by implementing a variety of measures including (i) contractual protections with employees and customers and (ii) technological, hardware and software-based access-control protections.  For example, Philips CSIP software includes proprietary login, user id and access control features to limit and restrict access to Philips' authorized users only.  This is done in such a way that Philips and non-Philips users may be granted or denied different degrees of access to certain elements of—and tools contained within—the Philips CSIP software.

29.    Philips' ability to control access to Philips CSIP—and to grant or deny certain levels of access to—non-Philips individuals is important and valuable to Philips because it provides Philips with a means of protecting its proprietary information while also providing Philips itself with the ability to provide enhanced maintenance and support services to customers of a type that could not be legitimately provided to those customers by non-Philips individuals.

30.    Philips CSIP implemented with the Brilliance line of Philips' Systems includes Philips' copyrighted software known as "Brilliance" and/or "Ingenuity" (hereinafter referred to as "Brilliance").

## ~ Background Concerning Zetta and Mr. Duncan ~

31. Purchasers of Philips Systems—such as hospitals and health care providers throughout the United States—may obtain post-warranty maintenance and other servicing for the Systems from Philips, or may use independent, non-Philips companies for maintenance and servicing.

32. Zetta provides competing, non-Philips maintenance and servicing for certain of Philips' Systems (as well as for various systems of other major manufacturers in the medical field).

33. Zetta offers such services, at least in part, by hiring former Philips employees and by improperly using Philips confidential and proprietary information that those employees learned during the course of their employment with Philips (and which was provided to those employees on a confidential basis and as a condition of their employment), and by encouraging those former Philips employees to utilize the same.

34. Mr. Duncan, during the course of his employment with Philips, entered into at least two written agreements with his Philips employer:  an "Employee Ethics and Intellectual Property Agreement" dated January 4, 1998 and an "Affirmation of Employee Ethics and Intellectual Property Agreement" dated August 23, 2013.  Those agreements, hereinafter referred to as the "Agreements", are attached hereto as Exhibits A and B, and are incorporated into this Complaint as if fully set forth herein.

35. Pursuant to these agreements, Mr. Duncan agreed to protect Philips' proprietary CSIP and related proprietary information from disclosure to others, including other entities including Zetta.

**~ Protection of Philips' CSIP and Confidential Information ~**

36.     Philips takes numerous, active methods to protect and keep confidential its proprietary information, including the Philips CSIP contained on and within the Systems, and its access control systems, including passwords and user ids, for such Philips CSIP.

37.     As noted above, Philips' CSIP software is protected by copyright.

38.     Philips CSIP also contains and encompasses trade secrets that are of commercial value to Philips and that Philips actively attempts to guard and preserve from disclosure or unauthorized access.

39.     As also noted above, employees of Philips—including Mr. Duncan—enter into contractual agreements to preserve and protect against unauthorized use and disclosure of Philips secret, proprietary and confidential information or data, including Philips' CSIP and its access control systems.   Notably, such agreements survive the cessation of each individual's employment with Philips and remain in effect beyond such employment.

40.     Additionally, Philips requires all non-Philips persons accessing its software, including Philips CSIP, on the Systems to register with Philips for password-protected access— sometimes referred to as "AIAT" access—as a means, *inter alia*, of regulating authorized use and the authorized levels of software access for each user.

41.     AIAT-level access is one of multiple levels of access that exist within the Systems.  Philips may grant certain individuals levels of access higher than AIAT-level access, which results in those individuals having authorized access to elements and functionalities of the Philips' CSIP that are not available to basic, AIAT-level users.

42.     Displays on computer screens that appear in connection with accessing Philips' software on the Systems, and the contents of written service and maintenance manuals used by technicians to access Philips' Systems, contain various written warnings, disclosures, and notices that place the user on notice that the software and information being accessed is Philips' proprietary and confidential software that is to be accessed only by authorized and licensed users; and that passwords provided by Philips in connection with such access are, likewise, subject to terms and conditions restricting their usage.

43.     Such warnings include, but are not limited to the Systems' calibration and adjustment instructions, an excerpt of which is attached hereto as Exhibit C.  Those instructions include the notice that "[u]se of this document and the information contained in it is strictly reserved for current Philips personnel and Philips customers who have a current and valid license from Philips for use by the customer's designated in-house service employee on equipment located at the customer's designated site," and that "[u]se of this document by unauthorized persons is strictly prohibited".  The instructions also state that, as to use of Philips' passwords, "[t]he password is the property of Philips Healthcare and is provided for the exclusive purpose of providing access to selected service utilities which are described in this service manual as being associated with the password," and "[u]se of this password for any purpose other than for the access to the selected services utilities is strictly prohibited."

44.     Other computer screen displays that appear to users, and other written manuals utilized by users, contain notices similar to those set forth in the preceding paragraph.

45.     Additionally, for protection of Philips' CSIP, Philips ensures that it retains—and does retain—ownership of its CSIP even though the physical machine upon which Philips CSIP resides may itself be owned by a hospital, medical center, or other Philips customer.

**~ Defendants' Actions at the University of Maryland Medical Center ~**

46.     In or about May 2015, Zetta and Mr. Duncan committed acts at the University of Maryland Medical Center, in the Baltimore, Maryland area, that resulted in them providing maintenance and support services for the University of Maryland Medical Center that were achieved only because Zetta and Mr. Duncan unlawfully exceeded their authorized levels of access to Philips CSIP, and did so specifically by actively circumventing and bypassing Philips' protective measures, in breach of the Agreements and in violation of federal and state laws.

47.     Mr. Duncan—working both for his own personal benefit and for the benefit of his employer, Zetta—accessed at least one Brilliance CT system at the University of Maryland Medical Center by: first using an unauthorized password for a higher-level technician that, upon information and belief, became known to him through his former employment with Philips and use and disclosure of which was prohibited by the Agreements; and, second, unlawfully bypassing and circumventing additional access-control measures by using and exploiting (i) functionalities within the System that would not have been available to Mr. Duncan had he gained access to the System via authorized methods and (ii) knowledge of trade secrets and other proprietary knowledge that became known to him through his former employment with Philips, the use and disclosure of which was prohibited by the Agreements.

48.     As a result of Mr. Duncan's and Zetta's actions, they were able to unlawfully bypass and circumvent Philips' software security measures for purposes of accessing data and software functionalities, including certain service menus, beyond authorized levels of access.

49.     As a result of Mr. Duncan's and Zetta's actions, they were able to perform servicing on the System of a type that they were not authorized or granted license to do, and of a type that intruded upon Philips' proprietary software and trade secrets, and of a type that

interfered with Philips' business of providing maintenance and support services that cannot be legitimately offered by any non-Philips entity.

**~ Defendants' Actions At Other Times and Places ~**

50.     As noted, Defendants' actions with respect to the University of Maryland Medical Center included intentionally and knowingly making use of proprietary, confidential information that was known to Mr. Duncan only because he is a former Philips employee.  This intentional and knowing use of Philips' confidential and proprietary information was done for the express purpose of permitting Defendants to actively and unlawfully bypass the access-protection and access-limiting features of Philips CSIP in order to then permit Defendants to perform servicing and maintenance activities on Systems that they otherwise were not authorized to perform, and to the detriment of Philips.

51.     As noted, Defendants' activities specifically involved actively unlawfully bypassing and circumventing the access-protection and access-limiting features of Philips CSIP.

52.     While the conduct set forth above occurred at the University of Maryland Medical Center, and occurred in connection with Mr. Duncan's participation, Defendants—upon information and belief—engage in the same improper and unauthorized conduct at sites they service nationwide.

53.     Mr. Duncan and Zetta—during a telephone conversation in or about May 2015—admitted to current employees of Philips that Mr. Duncan and Zetta had, and were, accessing Philips' Systems by utilizing an unauthorized password and by subsequently bypassing and circumventing other security features—consistent with the example set forth above—as a routine means of accessing diagnostic tools, maintenance logs, and other information and software

functionalities to which they would not have had, and did not have, legitimate or authorized access. They further admitted that, among their reasons for doing so, was access to diagnostic log files and other proprietary data and trade secrets to which they did not have legitimate access.

54. Access to, and use of, Philips' diagnostic log files, and other such Philips proprietary data and Philips trade secrets and Philips CSIP, is of significant commercial value to those that gain improper access to it—like Zetta and Mr. Duncan—because, *inter alia*, it permits the person or entity improperly accessing the information to provide maintenance and support services of a type and/or efficiency that—without their improper access—only Philips' service technicians could perform. Relatedly, protection of Philips' diagnostic log files, and other such Philips proprietary data and Philips trade secrets and Philips CSIP, is of significant commercial value to Philips with respect to Philips' marketing of support, servicing, and maintenance services to hospitals, medical centers, and other Philips customers.

55. Consistent with and related to the foregoing, both Zetta and Mr. Duncan have, upon information and belief, performed servicing and maintenance at other locations using the same and/or other unauthorized methods of bypass and circumvention, including but not limited to servicing at MetroHealth Medical Center, Cleveland, Ohio.

56. Also consistent with and related to the foregoing, Zetta—upon information and belief—employs other former Philips employees that engage in the same or similar conduct. For example, circumvention actions similar to those performed by Mr. Duncan were also, upon information and belief, performed by another Zetta employee, Nebyat Fereja, at the University of Maryland Medical Center in or about January 2016.

57. As noted above, Philips requires that third-party service providers, like Zetta, have their individual service technicians registered with Philips in order to achieve the

authorized levels of access to Philips CSIP that are sometimes referred to as "AIAT" levels of access.

58.     At the time of the above-described occurrences at the University of Maryland Medical Center, neither Mr. Duncan nor Mr. Fereja was registered with Philips for AIAT access. Mr. Duncan did not register with Philips for AIAT access until a point in time after these occurrences; and, upon information and belief, even after registering, Mr. Duncan continued to make use of unauthorized methods of bypass and circumvention in lieu of utilizing legitimate, AIAT-level means of access.  And, also upon information and belief, Mr. Fereja has never registered with Philips for AIAT access while employed by Zetta.

59.     Consistent with the foregoing paragraph, Zetta's technicians, including but not limited to Mr. Duncan, has gained access to Philips CSIP via unauthorized means of circumvention and bypass, and to levels of access beyond that to which any third-party service provider would have been granted.

60.     Upon information and belief, Zetta's conduct—and the conduct of those working for Zetta and for their own associated benefit—is not limited in time to the above-identified May 2015 and/or January 2016 events, is not limited to the above-identified methods of unauthorized access, circumvention, and/or bypass of Philips CSIP, and is not limited in geographic location to only the University of Maryland Medical Center.  Upon information an belief, Zetta's conduct—and the conduct of those working for Zetta and for their own associated benefit—is, instead, representative of widespread and ongoing conduct.

## Count I:  Violations of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a)

61.    Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count I.

62.    Defendants have intentionally and/or knowingly accessed Philips CSIP on the Systems either without authorization, or in excess of the access granted, or in excess of access that the Systems' owners had the rights and ability to confer upon Defendants.

63.    Defendants have thereby accessed and obtained information from the Systems that have violated the CFAA.

64.    While the Systems at-issue are, in most cases, owned by hospitals that are not parties to this action, Philips has reserved and retained its rights to the Philips CSIP contained on those Systems.

65.    By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have made unauthorized use of computer passwords and other access methods that they were not authorized to use, in violation of § 1030(a)(6)(A).

66.    By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have exceeded their authorized levels of access to the Systems and the Philips CSIP, in violation of § 1030(a)(6)(C).

67.    By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have exceeded their authorized levels of access to the Systems and the Philips CSIP, thereby obtaining valuable diagnostic and maintenance log files, and access to other valuable and proprietary tools and information, in violation of § 1030(a)(4).

68.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have caused Plaintiffs to incur losses in excess of $5,000.00 in value in a one-year period related to the investigation of and cost of responding to the conduct set forth in the preceding paragraphs of this Complaint.

69.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have exceeded their authorized levels of access to the Systems and the Philips CSIP, thereby obtaining valuable diagnostic and maintenance log files, and access to other valuable and proprietary tools and information, and thereby causing damages to Philips that include business losses, unfair competition, and intrusion upon trade secrets, in violation of § 1030(a)(5)(c), and that further include the threat of continuing and ongoing harms relating to the same.

## Count II:  Copyright Infringement

70.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count II.

71.     Philips' CSIP software is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101, *et seq.*

72.     Philips has complied in all respects with the provisions of the Copyright Act, and has registered the copyright in the Philips CSIP software for the Brilliance system with the United States Copyright Office.  Copies of these registrations are attached hereto as Exhibit D, and are fully incorporated into this Complaint as if set forth in full herein.

73.     Philips is the developer and owner of all rights, title, and interest in and to the copyright on the Philips CSIP for the Brilliance system.

74. Defendants' acts constitute direct and/or contributory infringement of Philips' copyrights, including infringement of Philips' copyrights on the Philips CSIP for the Brilliance system.

75. Defendants engaged in copyright infringement by copying, reproducing, distributing, displaying, using, and/or creating unauthorized derivative works of Philips' CSIP software without authorization.

76. Upon information and belief, these actions on Defendants' part have been knowing, deliberate, willful, reckless, and in utter disregard of Philips' rights.

77. Defendants' copyright infringement has caused, and will continue to cause, Philips to suffer substantial injuries, loss, and damage to its proprietary and exclusive rights to, and copyright in, the Philips CSIP software and, further, has damaged Philips' business, reputation and goodwill, diverted its trade, and caused a loss of profits, all in amounts not yet ascertained.

78. Defendants' copyright infringement, and the threat of continuing infringement, has caused, and will continue to cause, Philips repeated and irreparable injury. It is, at present, difficult to ascertain the amount of damages that would afford Philips adequate relief at law for Defendants' continuing acts. Philips' remedy at law is not, by itself, adequate to compensate it for the injuries already inflicted and further threatened by Defendants.

79. In sum, by engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have exceeded their authorized levels of access to the Systems and the Philips CSIP, in violation of Philips' copyrights, thereby obtaining valuable diagnostic and proprietary maintenance log files, and access to other valuable tools and information, and

thereby causing damages to Philips that include business losses, unfair competition, and intrusion upon trade secrets, and that further include the threat of continuing and ongoing harms relating to the same.

**Count III:  Violations of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1201**

80.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count III.

81.     As set forth in Count II, Defendants have improperly accessed works protected under Title 17 (copyright).

82.     Philips employs numerous technological measures including, but not limited to, its password and user ID protection scheme and protocol, in order to effectively protect and control access to and use of its copyrighted Philips CSIP and/or portions thereof.

83.     Upon information and belief, Defendants manufacture, import, provide, offer to the public, or otherwise traffic in technology, products, services, devices, components, or parts thereof, that are primarily designed or produced for the purpose of circumventing technological measures and/or protection afforded by technological measures that effectively control access to Philips CSIP and/or portions thereof.

84.     Upon information and belief, Defendants' technology, products, services, devices, components, or parts thereof have limited or no commercially significant purpose or use other than to circumvent technological measures that effectively control access to Philips' CSIP and/or portions thereof.

85.     In the course of doing so, Defendants have intentionally and/or knowingly circumvented technological measures that effectively control access to a work or works protected

under Title 17, in violation of 17 U.S.C. § 1201(a)(1)(A)—the Digital Millennium Copyright Act.

86.     Defendants' unauthorized means of accessing the Systems has, and does, entail the unauthorized access, copying, and potential alteration of the contents of Philips' copyrighted CSIP software.

87.     Philips has been and will continue to be damaged in an amount not presently known with certainty, but will be proven at trial.

88.     Philips is entitled to the range of relief provided by 17 U.S. C. §§ 1201-12-3, including but not limited to, injunctive relief, compensatory damages or statutory damages, punitive damages, and Philips' costs and attorneys' fees in amounts to be proven at trial. Defendants' conduct also has caused irreparable and incalculable harm and injuries to Defendants, and, unless enjoined, will cause further irreparable and incalculable injury, for which Philips has no adequate remedy at law.

89.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have exceeded their authorized levels of access to the Systems and the Philips CSIP, in violation of Philips' copyrights and the Digital Millennium Copyright Act, thereby obtaining valuable diagnostic and proprietary maintenance log files, and access to other valuable tools and information, and thereby causing damages to Philips that include business losses, unfair competition, and intrusion upon trade secrets, and that further include the threat of continuing and ongoing harms relating to the same.

**Count IV:  Violations of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836**

90.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count IV.

91.     Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above, in the Philips CSIP for the Brilliance system and its access control systems, including the passwords and user ids, that Defendants are using to gain access to the Philips CSIP within the Brilliance system.

92.     Philip's confidential, proprietary, and trade secret information relates to products used in, or intended for use in, interstate or foreign commerce.

93.     The Philips CSIP software and access control systems, including passwords and user ids, contain and are trade secrets because Philips restricts access to them and Philips has engaged in reasonable measures to maintain their secrecy.  Such reasonable measures to protect its trade secrets include, for example, implementing systems of access registration, access control measures, and other safeguards associated with Philips CSIP, including in the form of physical and/or technological safeguards and also including in the form of contractual protections and written notices and warnings.

94.     Philips has expended significant money and effort in developing the Philips CSIP and access control systems, and the information would be difficult to properly acquire or duplicate by Defendants or other competitors of Philips.

95.     The Philips CSIP and access control systems derive independent economic value to Philips by not being generally known, and not being readily ascertainable through proper

means, by another person who could obtain economic value from the disclosure or use of the information. Moreover, they are of significant commercial value to Philips, because among other things, Philips relies upon these trade secrets to achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer and with respect to pricing related thereto.

96.     Defendants misappropriated some or all of these trade secrets for its own unlawful use and/or benefit without express or implied consent by Philips.  At the time of its use of such trade secrets, Defendants knew or had reason to know that its knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret, and that its knowledge of Philips was derived from or through a person who owed a duty to Philips to maintain the secrecy of the trade secret or limit the use of the trade secret.

97.     Defendants' actions have been knowing, deliberate, willful, reckless, and in utter disregard of Philips' rights.

98.     As a result of Defendants' misappropriation of these trade secrets, Philips has suffered actual damages in an amount to be proven at trial.   At a minimum, Defendants have gained an improper competitive advantage over Philips that, *inter alia*, caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

99.     Defendants' conduct, and continuing use of the trade secrets and proprietary and confidential information of Philips, has caused, and will cause, Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by Defendants.

100.     Philips has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorneys' fees.

101.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have violated the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836.

102.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have exceeded their authorized levels of access to the Systems and the Philips CSIP, thereby obtaining valuable diagnostic and proprietary maintenance log files, and access to other valuable tools and information, and thereby intruding upon Philips' proprietary trade secrets and causing damages to Philips that include business losses and unfair competition, and that further include the threat of continuing and ongoing harms relating to the same.

**Count V:  Misappropriation of Trade Secrets and
Violation of the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1, *et seq.***

103.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count V.

104.     Philips owns and possesses certain confidential, proprietary, and trade secret information, including scientific, technical, and engineering information and financial, business, and economic information, as alleged above, in the Philips CSIP for the Brilliance system and its access control systems, including the passwords and user ids, that Defendants are using to gain access to the Philips CSIP within the Brilliance system.

105.     The Philips CSIP software and access control systems, including passwords and user ids, contain and are trade secrets because Philips restricts access to them and Philips has engaged reasonable measures to maintain their secrecy.  Such reasonable measures to protect its trade secrets include, for example, implementing systems of access registration, access control

- 22 -

measures, and other safeguards associated with Philips CSIP, including in the form of physical and/or technological safeguards and also including in the form of contractual protections and written notices and warnings.

106. Philips has expended significant money and effort in developing the Philips CSIP and access control systems, and the information would be difficult to properly acquire or duplicate by Defendants or other competitors of Philips.

107. The Philips CSIP and access control systems derive independent economic value to Philips by not being generally known, and not being readily ascertainable through proper means, by another person who could obtain economic value from the disclosure or use of the information. Moreover, they are of significant commercial value to Philips, because among other things, Philips relies upon these trade secrets to achieve an advantage in the marketplace with respect to the quality, range, and efficiency of the repair and maintenance services that it is able to offer and with respect to pricing related thereto.

108. Defendants misappropriated some or all of these trade secrets for its own unlawful use and/or benefit without express or implied consent by Philips. At the time of its use of such trade secrets, Defendants knew or had reason to know that its knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret, and that its knowledge of Philips was derived from or through a person who owed a duty to Philips to maintain the secrecy of the trade secret or limit the use of the trade secret.

109. Defendants' actions have been knowing, deliberate, willful, reckless, and in utter disregard of Philips' rights.

110.     As a result of Defendants' misappropriation of these trade secrets, Philips has suffered actual damages in an amount to be proven at trial.   At a minimum, Defendants have gained an improper competitive advantage over Philips that, *inter alia*, caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

111.     Defendants' conduct, and continuing use of the trade secrets and proprietary and confidential information of Philips, has caused, and will cause, Philips repeated and irreparable injury.  Philips' remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened by Defendants.

112.     Philips has been damaged by all of the foregoing and is entitled to an award of exemplary damages and attorneys' fees.

113.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have misappropriated trade secrets and have violated the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. 1065/1, *et seq*.

114.     By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Defendants have exceeded their authorized levels of access to the Systems and the Philips CSIP, thereby obtaining valuable diagnostic and proprietary maintenance log files, and access to other valuable tools and information, and thereby intruding upon Philips' proprietary trade secrets and causing damages to Philips that include business losses and unfair competition, and that further include the threat of continuing and ongoing harms relating to the same.

### Count VI:  Breach of Contract (Defendant Ronald J. Duncan)

115.     Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count VI.

116.    As set forth above, Mr. Duncan is a former Philips employee who is a party to, and subject to the terms of, Agreements with Philips intended to ensure that Mr. Duncan did not, and does not, improperly use, disclose, or exploit secret, proprietary or confidential information and data of Philips gained during the course of his employment with Philips.

117.    True and correct copies of Mr. Duncan's Agreements with Philips are attached hereto as Exhibits A and B, and are fully incorporated into this Complaint as if set forth in full herein.

118.    Mr. Duncan has intentionally and/or knowingly violated the terms of his Agreements with Philips by his use and disclosure of secret, proprietary or confidential information and data related to Philips' access control systems and Philips CSIP, including its login, user id and access control features, and by the  unauthorized manner in which he accessed Philips CSIP and via the use that he made of that information, including for purposes of commercial gain for himself personally and for Defendant Zetta.

119.    As a result of Defendant Duncan's breach of contract, Philips has suffered actual damages in an amount to be proven at trial.

120.    By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Mr. Duncan has violated the terms of the Agreements and—by doing so—has thereby obtained valuable diagnostic and proprietary maintenance log files, and access to other valuable tools and information, to both his own personal benefit and to Zetta's benefit, and thereby causing damages to Philips that include business losses, unfair competition, and intrusion upon trade secrets, and that further include the threat of continuing and ongoing harms relating to the same.

## Count VII:  Tortious Interference With Contract (Defendant Zetta)

121.    Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count VII.

122.    As set forth in Count V, above, Mr. Duncan has breached his Agreements.

123.    Mr. Duncan did so while in the employment of Zetta.  Upon information and belief, Zetta was aware or should have been aware of Mr. Duncan's contracts with Philips; and Zetta intentionally and/or knowingly encouraged and incentivized Mr. Duncan, as a former Philips employee, to breach the Agreements to provide Zetta with competitive advantages with respect to the services that Zetta is able to offer and the pricing associated with those services.

124.    Upon information and belief, Zetta intentionally and/or knowingly encourages and incentivizes other former Philips employees to do the same.

125.    This constitutes tortious interference with contract.

126.    As a result of Defendants' tortious interference with the Agreements, Philips has suffered actual damages in an amount to be proven at trial.

127.    By engaging in the conduct set forth in the preceding paragraphs of this Complaint, Zetta has tortiously interfered with the Agreements—and potentially also with the contracts of other Philips employees—and, by doing so, has thereby obtained valuable diagnostic and proprietary maintenance log files, and access to other valuable tools and information for its benefit, and thereby causing damages to Philips that include business losses, unfair competition, and intrusion upon trade secrets, and that further include the threat of continuing and ongoing harms relating to the same.

## Count VIII:  Unfair Competition

128.    Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count VIII.

129.    Philips ability to attract and retain customers for repair and maintenance of its products depending on the continued security and integrity, and the proprietary features of its Philips CSIP systems and software.

130.    When entering into contracts with hospitals and health care providers, or other third party service providers, for the repair and maintenance of Philips' Systems, Defendants, by relying on their improper and unauthorized access to Philips CSIP, misrepresent their rights to access/use such CSIP and therefore, their expertise and capabilities to service the Systems. Through such conduct, Defendants have gained an improper competitive advantage over Philips that, *inter alia*, caused or may cause Philips to be underbid or to otherwise lose out on business that it would have otherwise obtained.

131.    Relatedly, Defendants' actions have provided Zetta with competitive advantages with respect to the services that Zetta is able to offer and the pricing associated with those services.  These are advantages that Zetta would not have had but for Defendants' improper conduct in accessing and using Philips CSIP beyond the degree authorized.

132.    For the above mentioned reasons, Defendants have therefore engaged in unfair competition.

133.    As a result of Defendants' unfair competition, Philips has suffered actual damages in an amount to be proven at trial.

## Count IX:  Permanent Injunction

134.    Philips reasserts, re-alleges, and incorporates by reference the allegations in all other paragraphs of this Complaint as if fully set forth herein under Count IX.

135.    In addition to monetary damages and other relief sought via this Complaint consistent with the foregoing Counts, Plaintiffs hereby petition the Court for entry of a Permanent Injunction, prohibiting Defendants—including any and all employees of Zetta or others within Zetta's control—from engaging in, participating in, or assisting with any and all unauthorized access to Philips CSIP and trade secrets and any and all access and use of such Philips CSIP trade secrets that exceeds Zetta and the individuals' authorizations or that otherwise makes unauthorized use of Philips CSIP and such other injunctive relief as the Court deems just and proper.

## Jury Trial Demanded

136.    Plaintiffs hereby request a jury trial on all issues and claims contained herein that are eligible for trial by jury.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court:

A.      enter a permanent injunction consistent with Plaintiffs' request herein;

B.      enter a final order in Plaintiffs' favor, and holding Defendants liable, for all claims set forth herein;

C.      award monetary damages to Plaintiffs, including but not limited to compensatory damages and statutory, enhanced, and punitive damages, to the extent recoverable by law;

D.   award Plaintiffs their attorneys' fees and costs, to the extent recoverable by law; and

E.   award Plaintiffs any other damages and/or relief deemed appropriate by the Court.

By: /s/ James T. Hultquist

James T. Hultquist (6204320)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Tel:      (312) 207-1000
Fax:      (312) 207-6400
Email:   jhultquist@reedsmith.com

Kirsten R Rydstrom
Pa. ID 76549 (*pro hac vice motion to be filed*)
Thomas M. Pohl
Pa. ID 208080 (*pro hac vice motion to be filed*)
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA  15222
Tel.:      (412) 288-3131
Fax:      (412) 288-3063
Email:   krydstrom@reedsmith.com
           tpohl@reedsmith.com

*Counsel for Plaintiffs*

Dated:  May 10, 2017

EXHIBIT A

# Employee Ethics and Intellectual Property Agreement

In consideration of my accepting or continuing work at Philips Electronics North America Corporation or any subsidiaries (which will individually and collectively be called "the company") during such time as may be mutually agreeable, and in consideration of the salary or wages paid to me, I agree:

1. Not to use, publish or otherwise disclose (except as my job requires) either during or after my employment, any secret or confidential (proprietary) information or data of the company or its customers or any other third party received by the company in confidence

2. Upon the termination of my employment, to deliver promptly to the company all written and other materials that relate to the business of the company or its affiliates.

3. To disclose promptly and agree to assign, without further compensation, to the company or its nominee all those inventions and technical or business innovations developed or conceived by me alone or with others, while I am employed, which: (a) pertain to any line of the businesses, work or investigations of the company or affiliates, (b) pertain to any demonstrably anticipated business, research or development of the company or its affiliates, (c) are suggested by or result from work that I may do for the company, or (d) are aided by use of time, materials, facilities, patents, trade secrets, know-how, technology, confidential information, ideas, copyrights, trademarks, and service marks and any and all rights, applications and registrations relating to them of the company.*

4. To make and maintain for the company adequate and current written records of such inventions.

5. To perform all reasonable acts (such as execution of all necessary papers) and otherwise provide proper assistance (at the company's expense) during and subsequent to my employment to enable the company to obtain for itself or its nominees patents, copyrights or other legal protection for such inventions or innovations in any and all countries.

6. Not to disclose or utilize in my work any proprietary information of others (including that of any prior employers) or any inventions or innovations of my own which are not included within the scope of this agreement.

I have read and understood the Philips Electronics North America Corporation "Working Together" book. In consideration of my continuing employment with the company, I agree to abide by the ethical and legal principles of the company as they are incorporated in this book. I understand that failure to do so may result in the termination of my employment.

This agreement supercedes and replaces any Employee Ethics and Intellectual Property Agreement previously executed by me. It may not be modified or terminated, in whole or in part, except in writing signed by an authorized representative of the company

I certify that to the best of my knowledge and belief, I am not a party to any other agreement or subject to any conflict of interests that will interfere with my full compliance with this agreement, except as specifically identified below. I understand that this agreement does not constitute a contract of employment, either express or implicit.

| | | | |
|---|---|---|---|
| _Kendal Duncan_ | _1-5-98_ | _Barbara Maddox_ | |
| Employee's Signature | Date | Witness (Company representative) | Date |

I represent that the following are the only agreements, relationships and matters to which I have an interest that may conflict with the obligations I have undertaken above. I further agree to promptly notify my supervisor in writing of any change in this information.

_____

_____

*If employed in any of the following states: California, Delaware, Illinois, Kansas, Minnesota, North Carolina, Utah or Washington, employees should also sign the relevant paragraph of the Employment Invention Attachment on the back of this agreement.

EXHIBIT B

# PHILIPS

| Employee Name (Please Print): Ronald Jeffrey Duncan | Philips ID #: 10124316 |
|---|---|
| Job Title: Field Service Engineer III | |
| Manager Name: Patrick Kelly | |
| Employee Email Address: ron.duncan@philips.com | |

## Affirmation of Employee Ethics and Intellectual Property Agreement

You hereby acknowledge your continuing duties of confidentiality set forth in the Employee Ethics and Intellectual Property Agreement you executed at the beginning of your employment. These obligations include, without limitation, your agreement not to disclose or use (either directly or indirectly) any secret or confidential information relating to the business of PHILIPS, which was acquired by you from any source during your employment at PHILIPS. Such information includes (but is not limited to) technical or production know-how, formulae, trade secrets, designs, ideas, methods, processes and any other non-public information, future development plans, strategies and operations, and business and financial data, including but not limited to future product plans, customer lists, customer leads, price lists, discount structures, profits and product manuals.

In addition, you have continuing obligations with regard to ideas, discoveries and inventions, whether patentable or not made or conceived during your employment with PHILIPS. These ideas, discoveries, and inventions continue to be owned by PHILIPS and you may be called upon in the future to assist with their protection as intellectual property of PHILIPS.

If you have any questions concerning the nature or extent of your obligations under the aforementioned Employee Ethics and Intellectual Property Agreement, please call your HR Manager.

Ronald J. Duncan    August 23, 2013

_____

**Employee Name (Signature)**                                      **Date**

_____

**Company Witness Signature**                **Print**                **Date**

EXHIBIT C

# Brilliance 64 (v4.1)

## Calibration and Adjustment Instructions

O-Level Documentation

*459800724771*
*Revision B*

This document and the information contained in it is proprietary and confidential information of Philips Healthcare ("Philips") and may not be reproduced, copied in whole or in part, adapted, modified, disclosed to others, or disseminated without the prior written permission of the Philips Legal Department. Use of this document and the information contained in it is strictly reserved for current Philips personnel and Philips customers who have a current and valid license from Philips for use by the customer's designated in-house service employee on equipment located at the customer's designated site. Use of this document by unauthorized persons is strictly prohibited. Report violation of these requirements to the Philips Legal Department. This document must be returned to Philips when the user is no longer licensed and in any event upon Philips' first written request.

This document is intended to be (a.) used by customers and is licensed to them as part of their Philips equipment purchase or (b.) used to meet regulatory commitments as required by the FDA under 21 CFR 1020.30 (and any amendments to it) and other local regulatory requirements. Use of this document by unauthorized persons is strictly prohibited.

© 2014 Koninklijke Philips N.V. All Rights Reserved.
CSIP Level 0



**PHILIPS**

# Philips Healthcare

© 2014 KONINKLIJKE PHILIPS N.V. ALL RIGHTS RESERVED.

## Warranty Disclaimer

PHILIPS PROVIDES THIS DOCUMENT WITHOUT WARRANTY OF ANY KIND, IMPLIED OR EXPRESSED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## Limitation of Liability

PHILIPS HAS TAKEN CARE TO ENSURE THE ACCURACY OF THIS DOCUMENT. HOWEVER, PHILIPS ASSUMES NO LIABILITY FOR ERRORS OR OMISSIONS AND RESERVES THE RIGHT TO MAKE CHANGES WITHOUT FURTHER NOTICE TO ANY PRODUCTS HEREIN TO IMPROVE RELIABILITY, FUNCTION, OR DESIGN. PHILIPS MAY MAKE IMPROVEMENTS OR CHANGES IN THE PRODUCT(S) OR PROGRAM(S) DESCRIBED IN THIS DOCUMENT AT ANY TIME.

## Password Notice

THE PASSWORD IS THE PROPERTY OF PHILIPS HEALTHCARE AND IS PROVIDED FOR THE EXCLUSIVE PURPOSE OF PROVIDING ACCESS TO SELECTED SERVICE UTILITIES WHICH ARE DESCRIBED IN THIS SERVICE MANUAL AS BEING ASSOCIATED WITH THE PASSWORD.  USE OF THIS PASSWORD FOR ANY PURPOSE OTHER THAN FOR THE ACCESS TO THE SELECTED SERVICES UTILITIES IS STRICTLY PROHIBITED.

© 2014 Koninklijke Philips N.V. All Rights Reserved
Attention: This page contains copyrighted materials that are confidential and/or proprietary. Any release or distribution of this material, without permission, is a violation of law.

**EXHIBIT D**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Karyn Temple Claggett*

Acting United States Register of Copyrights and Director

**Registration Number**

## TX 8-337-423

Effective Date of Registration:
April 24, 2017

## Title

| | |
|---|---|
| **Title of Work:** | Brilliance 4.1.6 |
| **Previous or Alternate Title:** | Ingenuity 4.1.6 |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2016 |
| **Date of 1st Publication:** | July 10, 2016 |
| **Nation of 1st Publication:** | United States |

## Author

| | |
|---|---|
| ● **Author:** | Philips Medical Systems (Cleveland), Inc. |
| **Author Created:** | Proprietary computer program code |
| **Work made for hire:** | Yes |
| **Domiciled in:** | United States |
| **Anonymous:** | No |
| **Pseudonymous:** | No |
| ● **Author:** | Phillips India Ltd. |
| **Author Created:** | Proprietary computer program code |
| **Work made for hire:** | Yes |
| **Anonymous:** | No |
| **Pseudonymous:** | No |
| ● **Author:** | Philips Medical Systems Technologies Ltd. |
| **Author Created:** | Proprietary computer program code |
| **Work made for hire:** | Yes |
| **Anonymous:** | No |
| **Pseudonymous:** | No |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Philips Medical Systems (Cleveland), Inc. <br> 595 Miner Road, Cleveland, Ohio, 44143 |
| **Copyright Claimant:** | Phillips India Ltd. |

**Copyright Claimant:** Philips Medical Systems Technologies Ltd.

## Limitation of copyright claim

**Material excluded from this claim:** Brilliance/Ingenuity 4.1.5, 4.1.4, 4.1.3, 4.1.2, 4.1.1, 4.1.0, 4.0.1, 4.0.0, 3.6.5, 3.6.2, 3.6.1, 3.6.0, 3.5.4 and 3.5.2 and Brilliance 3.5.1, 3.5.0, 3.2.4, 3.2.2, 3.2.1, 3.2.0, 3.0.1, 3.0.0, 2.6.2, 2.6.1, 2.6.0, 2.5.2, 2.5.1, 2.5.0, 2.4.8, 2.4.7, 2.4.5, 2.4.1, 2.4.0, 2.3.9. 2.3.8, 2.3.7, 2.3.6, 2.3.5, 2.3.0, 2.2.7, 2.2.6, 2.2.5, 2.2.2, 2.2.1, 2.2.0, 2.0.3, 2.0.2, 2.0.1, and 2.0.0.

**Previously registered:** No

**New material included in claim:** Updates and revisions to proprietary computer program code

## Certification

**Name:** Douglas B. McKnight
**Date:** April 24, 2017

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn Temple Claggett*

Acting United States Register of Copyrights and Director

Registration Number

**TX 8-337-436**

Effective Date of Registration:
April 24, 2017

## Title

| | |
|---|---|
| Title of Work: | Brilliance 3.5.5 |
| Previous or Alternate Title: | Ingenuity 3.5.5 |

## Completion/Publication

| | |
|---|---|
| Year of Completion: | 2013 |
| Date of 1st Publication: | May 07, 2013 |
| Nation of 1st Publication: | United States |

## Author

- **Author:** Philips Medical Systems (Cleveland), Inc.
  - **Author Created:** Proprietary computer program code
  - **Work made for hire:** Yes
  - **Domiciled in:** United States
  - **Anonymous:** No
  - **Pseudonymous:** No

- **Author:** Philips India Ltd.
  - **Author Created:** Proprietary computer program code
  - **Work made for hire:** Yes
  - **Domiciled in:** India
  - **Anonymous:** No
  - **Pseudonymous:** No

- **Author:** Philips Medical Systems Technologies Ltd.
  - **Author Created:** Proprietary computer program code
  - **Work made for hire:** Yes
  - **Domiciled in:** Israel
  - **Anonymous:** No
  - **Pseudonymous:** No

## Copyright Claimant

| | |
|---|---|
| Copyright Claimant: | Philips Medical Systems (Cleveland), Inc.<br>595 Miner Road, Cleveland, Ohio, 44143 |
| Copyright Claimant: | Philips India Ltd. |

Copyright Claimant: Philips Medical Systems Technologies Ltd.

## Limitation of copyright claim

Material excluded from this claim: Brilliance/Ingenuity 3.5.4 and 3.5.2 and Brilliance 3.5.1, 3.5.0, 3.2.4. 3.2.2, 3.2.1, 3.2.0, 3.0.1, 3.0.0, 2.6.2, 2.6.1, 2.6.0, 2.5.2, 2.5.1, 2.5.0, 2.4.8, 2.4.7, 2.4.5, 2.4.1, 2.4.0, 2.3.9, 2.3.8, 2.3.7, 2.3.6, 2.3.5, 2.3.0, 2.2.7, 2.2.6, 2.2.5, 2.2.2, 2.2.1, 2.2.0, 2.0.3, 2.0.2, 2.0.1, and 2.0.0.

Previously registered: No

New material included in claim: Updates and revisions to proprietary computer program code

## Certification

Name: Douglas B. McKnight
Date: April 24, 2017

Correspondence: Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Karyn Temple Claggett*

Acting United States Register of Copyrights and Director

**Registration Number**

## TX 8-337-433

**Effective Date of Registration:**
April 24, 2017

## Title

**Title of Work:** Brilliance 2.6.2

## Completion/Publication

**Year of Completion:** 2013
**Date of 1st Publication:** March 24, 2013
**Nation of 1st Publication:** United States

## Author

- **Author:** Philips Medical Systems (Cleveland), Inc.
  **Author Created:** Proprietary computer program code
  **Work made for hire:** Yes
  **Domiciled in:** United States
  **Anonymous:** No
  **Pseudonymous:** No

- **Author:** Philips India Ltd.
  **Author Created:** Proprietary computer program code
  **Work made for hire:** Yes
  **Domiciled in:** India
  **Anonymous:** No
  **Pseudonymous:** No

- **Author:** Philips Medical Systems Technologies Ltd.
  **Author Created:** Proprietary computer program code
  **Work made for hire:** Yes
  **Domiciled in:** Israel
  **Anonymous:** No
  **Pseudonymous:** No

## Copyright Claimant

**Copyright Claimant:** Philips Medical Systems (Cleveland), Inc.
595 Miner Road, Cleveland, Ohio, 44143

**Copyright Claimant:** Philips India Ltd.

Copyright Claimant:    Philips Medical Systems Technologies Ltd.

## Limitation of copyright claim

Material excluded from this claim:    Brilliance 2.6.1, 2.6.0, 2.5.2, 2.5.1, 2.5.0, 2.4.8, 2.4.7, 2.4.5, 2.4.1, 2.4.0, 2.3.9, 2.3.8, 2.3.7, 2.3.6, 2.3.5, 2.3.0, 2.2.7, 2.2.6, 2.2.5, 2.2.2, 2.2.1, 2.2.0, 2.0.3, 2.0.2, 2.0.1, and 2.0.0

Previously registered:    No

New material included in claim:    Updates and revisions to proprietary computer program code

## Certification

Name:    Douglas B. McKnight
Date:    April 24, 2017

Correspondence:    Yes