**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| PHILIPS MEDICAL SYSTEMS (CLEVELAND), INC.; PHILIPS INDIA LTD.; PHILIPS MEDICAL SYSTEMS TECHNOLOGIES LTD.; KONINKLIJKE PHILIPS N.V.; and PHILIPS NORTH AMERICA LLC, | ) ) ) ) ) ) | Civil Action No. 1:17-CV-03425 |
| | ) | Judge Robert M. Dow, Jr. |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| ZETTA MEDICAL TECHNOLOGIES, LLC; and RONALD J. DUNCAN, | ) ) ) | |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PURSUANT TO RULE 12(b)(6)**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... II

I.      INTRODUCTION ......................................................................... 1

II.     LEGAL STANDARD ..................................................................... 3

III.    ARGUMENT ................................................................................. 4

        A.      Plaintiffs' Amended Complaint Fails to State a CFAA Claim ...................... 4

        B.      The Copyright Claim Should Be Dismissed .................................... 8

        C.      The DMCA Claim Must Be Dismissed Because Use of a Philips-Supplied
                Password Does Not Circumvent a Technological Measure .......................... 9

        D.      Plaintiffs' Trade Secret Claims Are Not Plausible ...................... 10

        E.      Plaintiffs Lack Standing to Assert the Breach of Contract and Tortious
                Interference Claims ....................................................... 12

        F.      The Unfair Competition Claims Must Be Dismissed ................................... 13

        G.      The Injunction "Count" Is Not a Claim and Should Be Dismissed ............. 14

IV.     CONCLUSION .......................................................................... 15

i

## TABLE OF AUTHORITIES

### CASES

*Adams Arms, LLC v. Unified Weapon Sys., Inc.*,
No. 8:16-CV-1503-T-33AEP, 2016 WL 5391394 (M.D. Fla. Sept. 27, 2016) ........................ 10

*AMP Inc. v. Fleischhacker*,
823 F.2d 1199 (7th Cir. 1987) .......................................................................................... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................... 3, 10, 11, 14

*Atkins v. City of Chicago*,
631 F.3d 823 (7th Cir. 2011) .............................................................................................. 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................... 3, 10, 11, 14

*Bittman v. Fox*,
107 F. Supp. 3d 896 (N.D. Ill. 2015) ................................................................................ 15

*Carpenter v. Aspen Search Advisers, LLC*,
No. 10 C 6823, 2011 WL 1297733 (N.D. Ill. Apr. 5, 2011) .............................................. 12

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
No. 15-cv-02177-SI, 2017 WL 1436044 (N.D. Cal. Apr. 24, 2017) .................................. 10

*Chamberlain Grp., Inc. v. Skylink Techs., Inc.*,
381 F.3d 1178 (Fed. Cir. 2004) .......................................................................................... 9

*Cochran v. Ill. State Toll Highway Auth.*,
828 F.3d 597 (7th Cir. 2016) .............................................................................................. 3

*Composite Marine Propellers, Inc. v. Van Der Woude*,
962 F.2d 1263 (7th Cir. 1992) .......................................................................................... 11

*Conley v. Gibson*,
355 U.S. 41 (1957) .............................................................................................................. 3

*Cronimet Holdings, Inc. v. Keywell Metals, LLC*,
73 F. Supp. 3d 907 (N.D. Ill. 2014) .................................................................................. 14

*Czech v. Wall St. on Demand, Inc.*,
674 F. Supp. 2d 1102 (D. Minn. 2009) ............................................................................... 4

*Desmond v. Chicago Boxed Beef Distribs., Inc.*,
921 F. Supp. 2d 872 (N.D. Ill. 2013) ................................................................................ 14

*EEOC v. Concentra Health Servs., Inc.*,
  496 F.3d 773 (7th Cir. 2007) ................................................................ 3

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ............................................................................ 8

*Ferring Pharm. Inc. v. Watson Pharm Inc.*,
  No. 2:12-cv-05724(WJM), 2014 WL 12634303  (D.N.J. Aug. 4, 2014) .................................... 7

*Fidlar Techs. v. LPS Real Estate Data Solutions, Inc.*,
  810 F.3d 1075 (7th Cir. 2016) ............................................................ 8

*Flava Works, Inc. v. Clavio*,
  No. 11 C 5100, 2012 WL 2459146  (N.D. Ill. June 27, 2012) .................................. 8

*Hafiz v. Greenpoint Mortg. Funding, Inc.*,
  652 F. Supp. 2d 1039 (N.D. Cal. 2009) .................................... 15

*Harbor Motor Co. v. Arnell Chevrolet-Geo, Inc.*,
  265 F.3d 638 (7th Cir. 2001) ............................................................ 8

*Hydrogen Master Rights, Ltd. v. Weston*,
  No. CV 16-474-RGA, 2017 WL 78582 (D. Del. Jan. 9, 2017) .................. 11

*Int'l Airport Ctrs., L.L.C. v. Citrin*,
  440 F.3d 418 (7th Cir. 2006) ........................................................ 5, 6

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
  No. 14-CV-02737, 2015 WL 1289984 (N.D. Cal. Mar. 20, 2015) .............. 5

*Lane v. Brocq*,
  No. 15 C 6177, 2016 WL 1271051 (N.D. Ill. Mar. 28, 2016) .................. 6

*Mintel Int'l Group, Ltd. v. Neergheen*,
  No. 08-cv-3939, 2010 WL 145786  (N.D. Ill. Jan. 12, 2010) .................. 6

*Molon Motor & Coil Corp. v. Nidec Motor Corp.*,
  No. 16 C 03545, 2017 WL 1954531 (N.D. Ill. May 11, 2017) .................. 11

*Navistar, Inc. v. New Baltimore Garage, Inc.*,
  No. 11-cv-6269, 2012 WL 4338816, 8 (N.D. Ill. Sep. 20, 2012) ............ 6, 10

*Noah v. Enesco Corp.*,
  911 F. Supp. 305 (N.D. Ill. 1995) .................................................... 14

*Nyack Hosp. v. Moran*,
  No. 08 CIV. 11112, 2010 WL 4118355  (S.D.N.Y. June 1, 2010) .............. 4

*Olson v. LTF Club Mgmt. Co., LLC,*
  No. 16 C 01179, 2017 WL 1314750 (N.D. Ill. Apr. 7, 2017) ................................... 13

*Reger Dev., LLC v. Nat'l City Bank,*
  592 F.3d 759 (7th Cir. 2010) ........................................................................... 13

*Reliance Ins. Co. v. PolyVision Corp.,*
  876 N.E.2d 898 (N.Y. 2007) ........................................................................... 13

*Serv. By Air, Inc. v. Phoenix Cartage & Air Freight, LLC,*
  78 F. Supp. 3d 852 (N.D. Ill. 2015) ................................................................. 13

*Spitz v. Proven Winners N. Am., LLC,*
  759 F.3d 724 (7th Cir. 2014) ........................................................................... 14

*Thompson v. JPMorgan Chase Bank, N.A.,*
  563 F. App'x 440 (6th Cir. 2014) ..................................................................... 15

*United States v. Nosal,*
  676 F.3d 854 (9th Cir. 2012) ............................................................................. 5

*United States v. Valle,*
  807 F.3d 508 (2d Cir. 2015) ............................................................................... 5

*WEC Carolina Energy Sols. LLC v. Miller,*
  687 F.3d 199 (4th Cir. 2012) ............................................................................. 5

*Wright v. Associated Ins. Cos. Inc.,*
  29 F.3d 1244 (7th Cir. 1994) ............................................................................. 4

## <u>STATUTES</u>

17 U.S.C. § 106 .................................................................................................... 8

17 U.S.C. § 1201(a) ............................................................................................. 9

18 U.S.C. § 1029(e) ............................................................................................. 7

18 U.S.C. § 1030(a)(4) ........................................................................................ 7

18 U.S.C. § 1030(a)(5) ........................................................................................ 7

18 U.S.C. § 1030(a)(6) ..................................................................................... 4, 7

18 U.S.C. § 1030(c) ......................................................................................... 4, 6

18 U.S.C. § 1030(e) ............................................................................................. 7

18 U.S.C. § 1030(g) ......................................................................................... 4, 6

18 U.S.C. § 1836 ............................................................................................... 10, 11, 12

28 U.S.C. § 1927 ...................................................................................................... 12

765 Ill. Comp. Stat. 1065 ............................................................................. 11, 12, 14

815 Ill. Comp. Stat. 510/2 ........................................................................................ 14

**<u>RULES</u>**

Fed. R. Civ. P. 11 ..................................................................................................... 12

Fed. R. Civ. P. 12(b)(6)......................................................................................... 1, 3

Fed. R. Civ. P. 8(a)(2)............................................................................................... 3

Pursuant to Fed. R. Civ. P. 12(b)(6), Zetta Medical Technologies, LLC ("Zetta") and Ronald J. Duncan ("Mr. Duncan") move to dismiss the Amended Complaint filed by Philips Medical Systems (Cleveland), Inc.; Philips India Ltd.; Philips Medical Systems Technologies Ltd.; Koninklijke Philips N.V.; and Philips North America LLC (collectively, "Philips").

## I.   INTRODUCTION

Zetta is a small privately owned company that maintains hospital imaging equipment. The five Plaintiffs are part of a multinational network of affiliated Philips companies that make and sell, among other things, computed tomography ("CT") systems. Zetta and Philips occasionally offer competing services to maintain Philips's imaging systems at various hospitals.

The parties' dispute relates to Zetta's allegedly improper use of a universal password to access a Philips CT system owned by the University of Maryland Medical Center ("UMMC"). Philips provides this password to every purchaser of this type of CT system, and, for more than a decade, this same password has been used to access and maintain Philips systems. Because Zetta was authorized to service the Philips CT system at issue[1], any alleged use by Zetta of this password on UMMC equipment was not wrongful or actionable.

A Philips entity first contacted Zetta regarding use of this service password in an August 2016 letter. This letter protested a much earlier May 2015 access of the UMMC CT system, which a Philips engineer apparently witnessed. Philips provided no explanation for why it waited more than a year to contact Zetta. After receiving the letter, Zetta attempted to understand Philips's concerns and to reach a resolution regarding use of the password. The parties' negotiations broke

---

[1] Zetta provided its services through a subcontract with Siemens Medical Solutions USA, Inc. ("Siemens"). Siemens was the primary contractor with UMMC. Philips's Amended Complaint concedes that Zetta provided "maintenance and support services" for UMMC, but it asserts that Zetta exceeded its "authorized levels of access" to Philips's software. *See* Am. Compl. at ¶ 46.

1

down in early December 2016, and Philips made no further attempt to contact Zetta until the five

Plaintiffs filed suit in May 2017, approximately two years after the Philips conglomerate learned

about the allegedly improper use of the password.

Philips's multi-year delay in filing suit against a much smaller competitor puts the

Amended Complaint in context. The five Plaintiffs are not genuinely seeking to protect trade

secrets, copyrights or non-disclosure agreements. If they were, they undoubtedly would have acted

with dispatch. This lawsuit instead seeks to damage Zetta as a competitor and to delegitimize it in

the marketplace through intimidating legal claims. Philips is attempting to use this lawsuit to send

a message to others that Zetta has somehow acted improperly. Its tactics are working. Philips's

reckless and defamatory allegations, which apparently have been repeated outside of this lawsuit,

have already cost Zetta its contract for the UMMC work. But Zetta has done nothing wrong. It is

instead the victim of an ill-advised lawsuit.

Zetta's alleged use of a password that Philips provides to its customers and others for

service purposes is simply not actionable as alleged in the Amended Complaint. Each of Philips's

nine "counts" is either legally defective or implausible or both. The first count cites a non-existent

statute allegedly relating to the Computer Fraud and Abuse Act ("CFAA") and otherwise fails to

adequately plead a claim under the CFAA. The second count fails as a matter of law because

Philips does not allege how any copyrights were actually infringed. Use of a service password

also does not "circumvent" a technological measure under the Digital Millennium Copyright Act

("DMCA"), and this Court has previously rejected a claim similar to Philips's third count. The

fourth and fifth counts, which charge trade secret misappropriation under federal and state law,

fail because Philips has not plausibly pleaded that a decade-old universal password, which is

known to every purchaser of its equipment and countless service technicians, constitutes a trade

secret. The sixth and seventh counts, relating to Mr. Duncan's alleged breach of contract, fail for a variety of reasons, not least of which is that the contracting Philips entity is not a party to this action. The final two counts, "unfair competition" and "permanent injunction," merely reincorporate the prior defective counts. The Court should therefore dismiss the Amended Complaint in its entirety.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Factual allegations must, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011). However, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For purposes of a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. The "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim"

3

and "may be considered by the district court in ruling on the motion to dismiss . . . without converting [it] to a motion for summary judgment." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

## III.   ARGUMENT

### A.   Plaintiffs' Amended Complaint Fails to State a CFAA Claim

The first count of the Amended Complaint purports to allege violations of the Computer Fraud and Abuse Act, but Philips's allegations verge on the unintelligible. The Amended Complaint asserts, for example, that Defendants acted "in violation of § 1030(a)(6)(C)," *see* Am. Compl. at ¶ 66, but the CFAA does not include a subsection 1030(a)(6)(C). Subsection 1030(a)(6) only has subclauses (A) and (B). For this reason alone, the Court should dismiss the CFAA claim. Zetta cannot have acted in violation of a statute that does not exist.

Philips cites other subsections of Section 1030, but the nature of alleged violation remains equally unclear. To state a claim, a plaintiff must credibly plead several elements:

> a civil action under subsection 1030(g) of the CFAA requires; (1) establishing the elements of the particular substantive (criminal) offense under subsection 1030(a); (2) establishing that the plaintiff suffered "damage or loss" as a result of such a violation (although some, but not all, such offenses themselves already require "damage" and one now requires "damage and loss"); and (3) establishing one of the five types of conduct specified under subsection (c)(4)(A)(i), which are also required under subsection 1030(g) (some of which might also constitute "damage" or "loss").

*Nyack Hosp. v. Moran*, No. 08 CIV. 11112, 2010 WL 4118355, at *6 (S.D.N.Y. June 1, 2010) (*quoting Czech v. Wall St. on Demand, Inc.*, 674 F. Supp. 2d 1102, 1109 (D. Minn. 2009)). Here, the Amended Complaint fails on both the substantive offense and other required elements.

Philips concedes that the systems at issue "are, in most cases, owned by hospitals that are not parties to this action," *see* Am. Compl. at ¶ 64, and that "passwords provided by Philips" are used to access these systems, *see id.* at ¶ 42. Philips also concedes that UMMC, as the owner of

4

the specific CT system at issue, authorized Zetta to service its equipment. *Id.* at ¶ 46. The gravamen of the pleading is that Zetta allegedly used a Philips-supplied password in a way Philips did not authorize and Zetta thus exceeded its authorized access. *See id.* at ¶¶ 62, 66-67 and 69. This allegation is ineffective to state a CFAA claim. *See Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, No. 14-CV-02737, 2015 WL 1289984, at \*6 (N.D. Cal. Mar. 20, 2015). The CFAA perhaps might be relevant if Defendants misappropriated or illicitly obtained a unique password assigned to a particular user, but the Amended Complaint makes no such accusation.

Philips nonetheless invokes the CFAA by alleging that Zetta violated Philips's "terms and conditions" restricting usage of the Philips-supplied password. Am. Compl. at ¶ 42. Even assuming this allegation to be true, this activity does not violate the CFAA: "[T]he phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions." *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012). This construction of the CFAA is required to avoid "criminaliz[ing] the conduct of millions of ordinary computer users." *United States v. Valle*, 807 F.3d 508, 527 (2d Cir. 2015). Reading private use conditions into the CFAA would lead to absurd results, such as a finding that the CFAA was violated by an employee who accesses Facebook at work in violation of the employer's policies. *See WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 206 (4th Cir. 2012).

The Seventh Circuit has not specifically addressed whether violation of private use conditions could implicate the CFAA's substantive criminal provisions. Its decision in *International Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418 (7th Cir. 2006), which involved an employee deleting an employer's files, includes a broader reading of the CFAA than other circuits, but even this decision does not go as far as the type of claim Philips advances here. Indeed, at least one decision from this Court has cited *Valle* as persuasive authority while still recognizing

5

the continuing vitality of a CFAA claim under the particular fact pattern alleged in *Citrin,* namely, a disloyal employee who uses an employer's computer for his own purposes. *See Lane v. Brocq*, No. 15 C 6177, 2016 WL 1271051, at *9 nn. 7–8 (N.D. Ill. Mar. 28, 2016). The facts alleged in *Citrin* and *Lane* are not alleged here. Zetta owed no duty of loyalty to Philips. In this case, Philips is attempting to use its own terms and conditions to criminalize access to a system that it does not own through a password it voluntarily provided. The Court should reject this attempt to misuse the CFAA and dismiss this attempted claim.

Philips's CFAA claim fails for the additional reasons that Philips has not adequately pleaded a "loss to 1 or more persons during any 1-year period…aggregating at least $5,000 in value." § 1030(c)(4)(A)(i)(I), invoked by § 1030(g). Philips alleges in a bare statement that it incurred "losses in excess of $5,000.00 in value in a one-year period related to the investigation of and cost of responding to the conduct" *see* Am. Compl. at ¶ 68, but this is insufficient for pleading a CFAA violation. As this Court has held, an alleged "loss" under the CFAA "must relate to the investigation or repair of a computer or computer system following a violation that caused impairment or unavailability of data or interruption of service." *Mintel Int'l Group, Ltd. v. Neergheen*, No. 08-cv-3939, 2010 WL 145786, at *10 (N.D. Ill. Jan. 12, 2010). "[C]osts that are not related to computer impairment or computer damages are not cognizable 'losses' under the CFAA." *Id.* In contrast, a plaintiff who claims reasonable computer-related expenses may satisfy the "loss" threshold under the statute. *Navistar, Inc. v. New Baltimore Garage, Inc.*, No. 11-cv-6269, 2012 WL 4338816, at **2, 8 (N.D. Ill. Sep. 20, 2012) (allowing CFAA claim when plaintiff "hired investigative firm Pinkerton to ascertain whether any unauthorized access had occurred, how, and the extent of the damage resulting from any breach.")

Here, Philips's bare allegation of "loss" does not provide any detail at all. It does not, for example, allege to have hired an investigative firm at an expense of greater than $5,000 to investigate the alleged intrusion. *Id.* This is because Philips was well aware of the circumstances of the alleged improper use. The Amended Complaint concedes that "employees of Philips" participated in a telephone conversation in May 2015 in which use of the service password was discussed. *See* Am. Compl. at ¶ 53. There was nothing for Philips to investigate. Furthermore, and as discussed below, Philips does not allege any impairment or unavailability of data or interruption of service that could underlie any such investigation.

Each of Philips's remaining individual CFAA claims is also defective on its face. Section 1030(a)(6)(A) requires an intent to defraud and trafficking in a password or similar information. Philips has alleged neither of these elements. An "unauthorized use of computer passwords and other access methods," *see* Am. Compl. at ¶ 65, is not "trafficking" under 18 U.S.C. § 1029(e)(5), which the CFAA defines as "transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of." *Ferring Pharm. Inc. v. Watson Pharm Inc.*, No. 2:12-cv-05724(WJM), 2014 WL 12634303, at *5 (D.N.J. Aug. 4, 2014) (dismissing CFAA claim). Philips also has not effectively alleged a violation of Section 1030(a)(4). Am. Compl. at ¶ 67. This section, like others, requires an intent to defraud, but Philips has not alleged any such intent. Philips's attempt to allege a violation of § 1030(a)(5)(C), Am. Compl., ¶ 69, likewise fails because this subsection requires both "damage and loss." These are distinct terms in the CFAA, with explicitly different definitions. 18 U.S.C. § 1030(e)(8), (11). Although Philips facially (insufficiently) alleges a loss, the complaint is silent as to any "impairment to the integrity or availability of data" that may have occurred. The mere usage of a system without any alteration of data or disruption

of service cannot constitute "damages" under the CFAA. *Fidlar Techs. v. LPS Real Estate Data Solutions, Inc.*, 810 F.3d 1075, 1084 (7th Cir. 2016).

### B.     The Copyright Claim Should Be Dismissed

Philips has not alleged any act that would violate 17 U.S.C. § 106.  In order to state a claim for direct copyright infringement, a plaintiff must allege facts setting forth (1) ownership of a valid copyright in a work and (2) the copying of elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Harbor Motor Co. v. Arnell Chevrolet-Geo, Inc.*, 265 F.3d 638, 644 (7th Cir. 2001).  Although Philips generally alleges "copying, reproducing, distributing, displaying, using and/or creating unauthorized derivative works," Am. Compl. at ¶ 75, the complaint is entirely silent as to any particular act that would be understood to fall into any of those descriptions.  This is (at most) a threadbare recital of the elements of a copyright infringement claim, and is insufficient under *Iqbal*.  While Philips may have alleged that the Defendants *accessed* the software residing on the UMMC equipment, Philips does not state any facts that support an allegation that Defendants somehow *copied* the Philips CSIP program, or created a derivative work from it.  Mere access of software without any copying is not a violation of § 106.  Without an alleged infringing act, Philips's copyright count should be dismissed. *Flava Works, Inc. v. Clavio*, No. 11 C 5100, 2012 WL 2459146, at *2 (N.D. Ill. 2012) (dismissing copyright claims when plaintiff "[did] not include operative facts, such as…the means of its copying and/or distribution.")

Philips also failed to identify the actual copyrighted work allegedly infringed by Defendants.  Philips has not alleged, for example, that Defendants copied (or even had access to) the *source code* for the CSIP software.  Yet, the three Certificates of Registration provided in the Amended Complaint are limited to "Proprietary computer program code," and do not include, for

example, displays, outputs, user interfaces, etc. Am. Compl., Ex. D. Moreover, the registrations are limited to three specific versions of software: Brilliance 4.1.6, Brilliance 3.5.5 and Brilliance 2.6.2. The registrations explicitly *exclude* previous Brilliance 4.x.x, 3.x.x and 2.x.x software versions (e.g., Brilliance 4.1.5, 4.1.4, 4.1.3, etc.). *Id.* Philips has not alleged that any of the three specifically covered versions were resident on the UMMC equipment, or that Defendants accessed any of these three versions. In fact, Philips's own copyright registration shows that the Brilliance 4.1.6 program was not published until July 10, 2016 – more than a year after any alleged act of infringement. *Id.* Philips's bare allegation of contributory infringement, *see* Am. Compl. at ¶ 74, also fails because there can be no contributory infringement without a direct infringement. Moreover, Philips pleads no facts regarding any third party who "was infringing with the assistance and knowledge" of Defendants.

### C. The DMCA Claim Must Be Dismissed Because Use of a Philips-Supplied Password Does Not Circumvent a Technological Measure

Count three of the Amended Complaint purports to state a claim under 17 U.S.C. § 1201(a), a section of the DMCA. Pleading under this statute requires an allegation of "(1) ownership of a valid copyright on a work, (2) effectively controlled by a technological measure, which has been circumvented." *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004).

The sole technological measure described in Philips's complaint is "its password and user ID protection scheme and protocol," and the only specific allegedly circumventive activity described in the complaint is Defendant's alleged "utilizing an unauthorized password." Am. Compl. at ¶¶ 82, 53. As a matter of law, use of a username and password is not a "circumvention" under the DMCA because "using a password to access a copyrighted work, even without authorization,…does not involve descrambling, decrypting, or otherwise avoiding, bypassing,

9

removing, deactivating, or impairing a 'technological measure.'" *Navistar, Inc.*, 2012 WL 4338816, at *5. Philips concedes that "passwords provided by Philips" are used to access its systems. Am. Compl. at ¶ 42. It therefore pleaded itself out of a DMCA claim.

Philips summarily adds that the Defendants "subsequently bypass[ed] and circumvent[ed] other security measures," Am. Compl. at ¶ 53, but gives no details for those unsupported allegations. These allegations are thus insufficient under *Iqbal* and *Twombly* to state a claim. Likewise, Philips' bare assertion on information and belief that Defendants "traffic in technology" that is "primarily…for the purpose of circumventing technological measures" is both groundless and legally insufficient to maintain a DMCA claim. Am. Compl. at ¶ 83. Again, the only alleged operative fact pertains to Defendants' use of a universal service password. Thus, even if Defendants had "trafficked" in this password (which has not been alleged), the mere "shar[ing of] its password with a third-party…simply does not appear to be covered by the DMCA." *Navistar, Inc.*, 2012 WL 4338816, at *5.

### D. Plaintiffs' Trade Secret Claims Are Not Plausible

Philips has attempted to state a claim against Defendants under the new federal Defend Trade Secrets Act for activity that occurred prior to the Act's enactment. 18 U.S.C. § 1836. This Act took effect in May 11, 2016, but it is not an *ex post facto* law. Indeed, multiple courts have held that a DTSA plaintiff must make "specific allegations that defendant used the alleged trade secrets after the DTSA's May 11, 2016 enactment," in order to state a claim. *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2017 WL 1436044, at *5 (N.D. Cal. Apr. 24, 2017); *Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 8:16-CV-1503-T-33AEP, 2016 WL 5391394, at *6 (M.D. Fla. Sept. 27, 2016) ("the Court finds that [plaintiff] may state a plausible claim for relief, if [plaintiff] sufficiently alleges a prohibited 'act' occurring after May

11, 2016."); *Hydrogen Master Rights, Ltd. v. Weston*, No. CV 16-474-RGA, 2017 WL 78582, at *10 (D. Del. Jan. 9, 2017) (dismissing DTSA count that alleged nothing "other than a conclusory allegation of continuing use and disclosure" after May 2016.) In this case, Philips has only pleaded facts relating to actions allegedly occurring in May 2015 and January 2016, Am. Compl. at ¶¶ 53, 56, 60, i.e., *prior* to the DTSA's effective date. Philips has not alleged any misappropriation or use of its supposed trade secrets by Defendants after May 2016. For this reason alone, the DTSA count should be dismissed.

Philips's DTSA and Illinois Trade Secret Act (ITSA) claims also should be dismissed for failing to plead a plausible case under *Iqbal* and *Twombly*. Although the DTSA is still new, this district has applied the pleading standards for state law trade secret claims when analyzing dismissal motions for the DTSA. *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, No. 16 C 03545, 2017 WL 1954531, at *3 (N.D. Ill. May 11, 2017) ("For both the federal and the Illinois trade secret statutes, then, the question is whether [Plaintiff] has plausibly alleged that (1) there are trade secrets (2) that were misappropriated by [Defendant].") In Illinois, a party seeking trade secret protection must do more than "point to broad areas of [information] ... and assert that something there must have been secret and misappropriated. The plaintiff must show concrete secrets." *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992), citing *AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1203 (7th Cir. 1987). Here, Philips has not met any threshold in identifying its alleged trade secrets. The Amended Complaint states only generally that its CSIP software contains trade secrets. Am. Compl. at ¶ 91. Philips is silent, however, as to what those secrets are, what they teach, what technology they relate to, or anything that might allow Defendants to reasonably understand the nature of the supposedly misappropriated material. This cannot suffice to support a claim of trade secret misappropriation.

11

*Carpenter v. Aspen Search Advisers, LLC*, No. 10 C 6823, 2011 WL 1297733, at *3 (N.D. Ill. Apr. 5, 2011) (dismissing trade secret count when the plaintiff provided "no specifics about the nature of the confidential data for which it claims trade secret protection.")

The only items pleaded with any type of specificity are "the password and userids" for the Brilliance system. These universal service passwords, however, cannot be trade secrets because they are known in the service industry and appear in various user manuals for Brilliance and other Philips systems. They also appear to be available on the Internet. Philips also does not plausibly allege that it took reasonable steps to protect these supposed trade secrets. It cannot dispute, for example, that its customers who purchase equipment are authorized to use the CSIP software and to use the universal service passwords. But Philips makes no allegation—and provides no evidence—that those customers were under any obligation to keep the password under lock-and-key. But, if Philips intends to claim that a decade-old static password is a trade secret, it should do so clearly and unequivocally. This allegation then can be subsequently measured against Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the fee shifting provisions of the DTSA and ITSA. The Court should not give Philips a pass on its vague pleading if it really is attempting to claim that Defendants misappropriated a trade secret by using this password.

### E. Plaintiffs Lack Standing to Assert the Breach of Contract and Tortious Interference Claims

As pleaded, Mr. Duncan was never a "Philips" employee, and the contracts attached to the Amended Complaint are not between Mr. Duncan and "Philips." Instead, from the face of Exhibit A to the Amended Complaint, Mr. Duncan's agreement was with "Philips Electronics North America Corporation," which is a separate and distinct corporate entity from any of the five named plaintiffs. Thus, Philips's pleading does not include a Plaintiff in privity with either Defendant. Philips certainly was "well advised to operate with the minimal care necessary to determine, before

bringing suit, which of its family members has been wronged." *Reliance Ins. Co. v. PolyVision Corp.*, 876 N.E.2d 898, 901 (N.Y. 2007) (holding a New York statute did not permit late-naming of a proper, related, corporate entity as plaintiff). Without the proper party, Philips's sixth count necessarily fails because, to state a cause of action for a breach of contract, a plaintiff must allege among other things "substantial performance *by the plaintiff*." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (emphasis added). The breach of contract claim would fail for other reasons, including that it is unenforceable in the manner Philips attempts to use it, even if the contracting Philips entity did join the suit.

Philips's claim against Zetta for tortious interference must also be dismissed. A claim for tortious interference requires: (1) the existence of a valid contract between plaintiff and another; (2) defendant's awareness of this contract; (3) defendant's intentional and unjustified inducement of a breach; (4) a breach by the other contracting party; and (5) damages. *Serv. By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, 866 (N.D. Ill. 2015). As discussed above, no contract exists between "Philips" and Mr. Duncan. Without a contract, and without a breach of a contact, there can be no tortious interference by Zetta. Additionally, Philips's allegation that Zetta "intentionally and/or knowingly encouraged and incentivized Mr. Duncan" to breach any agreement is wholly unsupported. Am. Compl. at ¶ 123. Philips pleads this allegation only on "information and belief," and without anything more, this claim should be dismissed as implausible. *See Olson v. LTF Club Mgmt. Co., LLC*, No. 16 C 01179, 2017 WL 1314750, at *2 (N.D. Ill. Apr. 7, 2017).

### F.    The Unfair Competition Claims Must Be Dismissed

Philips does not identify any statute under which it brings its count of unfair competition. Nevertheless, in Illinois the common law of unfair competition has been codified by the UDTPA

at 815 Ill. Comp. Stat. 510/2. *Desmond v. Chicago Boxed Beef Distribs., Inc.*, 921 F. Supp. 2d 872, 884-885 (N.D. Ill. 2013). Philips's claim should be dismissed for multiple reasons.

First, to the extent that Philips's unfair competition claim is based on the same underlying conduct alleged with respect to its Illinois Trade Secret Act count, it is specifically preempted by statute. 765 Ill. Comp. Stat. 1065/8(a) ("this Act is intended to displace conflicting tort, restitutionary, *unfair competition*, and other laws of this State providing civil remedies for misappropriation of a trade secret.") (emphasis added). The Amended Complaint cites Defendants' "accessing and using Philips CSIP beyond the degree authorized," but this is tantamount to its failed trade secret misappropriation claim. Am. Compl. at ¶ 130. Because both the unfair competition claim and the trade secret claim are "dependent on the existence of confidential information," the unfair competition count should be dismissed. *Cronimet Holdings, Inc. v. Keywell Metals, LLC*, 73 F. Supp. 3d 907, 920 (N.D. Ill. 2014) (dismissing unfair competition claim as preempted under ITSA); *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014) (affirming preemption of claims even though the confidential information may not have qualified under the statutory definition of a trade secret).

Philips's allegation that Defendants "misrepresent their rights" is also wholly unsupported by facts. Am. Compl. at ¶ 130. The Amended Complaint is silent as to any supposed instance of Zetta or Mr. Duncan misrepresenting their authorized capabilities to potential customers. Once again, this rank speculation cannot survive under *Iqbal* and *Twombly*.

### G. The Injunction "Count" Is Not a Claim and Should Be Dismissed

Philips styles its final count as "Permanent Injunction." Am. Compl. at ¶¶ 134, 135. However, this district has consistently held that, "An injunction is a remedy, not a cause of action." *Noah v. Enesco Corp.*, 911 F. Supp. 305, 307 (N.D. Ill. 1995) (dismissing count for "injunctive

relief"); *Bittman v. Fox*, 107 F. Supp. 3d 896, 905 (N.D. Ill. 2015) (same). Other courts have similarly dismissed such counts. *Thompson v. JPMorgan Chase Bank, N.A.*, 563 F. App'x 440, 442 n.1 (6th Cir. 2014); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1049 (N.D. Cal. 2009). This final "count" should be dismissed.

## IV.    CONCLUSION

A civil action is not a substitute for legitimate market competition. Philips has failed to plead a plausible claim for relief, and the Court should dismiss the Amended Complaint in its entirety.

Dated: July 5, 2017                                    Respectfully submitted,

/s/Aaron R. Feigelson
David M. Airan (6215687)
Aaron R. Feigelson (6279091)
**LEYDIG, VOIT & MAYER, LTD.**
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601
Telephone: (312) 616-5600
Facsimile: (312) 616-5700

*Attorneys for Defendants Zetta Medical*
*Technologies, LLC and Ronald J. Duncan*

15

## CERTIFICATE OF SERVICE

I certify that on the 5th day of July, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for Plaintiffs Philips Medical Systems (Cleveland), Inc.. et al.*

Kirsten R Rydstrom
Thomas M. Pohl
**REED SMITH LLP**
225 Fifth Avenue
Pittsburgh, PA 15222
Tel.: (412) 288-3131

James T. Hultquist (6204320)
**REED SMITH LLP**
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Tel: (312) 207-1000

*/s/Aaron R. Feigelson*

16