# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PHILIPS MEDICAL SYSTEMS (CLEVELAND), INC.; PHILIPS INDIA LTD.; PHILIPS MEDICAL SYSTEMS TECHNOLOGIES LTD.; KONINKLIJKE PHILIPS N.V.; and PHILIPS NORTH AMERICA LLC, | Civil No: 1:17-CV-03425 |
| | Judge Robert M. Dow, Jr. |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| ZETTA MEDICAL TECHNOLOGIES, LLC; and RONALD J. DUNCAN, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

In an attempt to justify dismissal, Defendants portray Philips' case as limited to Zetta's unauthorized use of a service login and password to access a Philips CT system purchased by UMMC with certain access restrictions. As alleged, this case involves much more. After Zetta uses login credentials known to its employee from his prior experience at Philips and in violation of confidentiality obligations, Zetta uses trade secret information learned from its ex-Philips employee to unlawfully gain backdoor access to Philips' proprietary and copyrighted service tools. Even using the unauthorized login credentials, Zetta would typically still need to insert a hardware "key" into a port in the computer to access Philips' proprietary service tools. But by misappropriating an ex-Philips employee's knowledge of the file structure and access controls used in Philips' software, Zetta circumvents the access controls to gain illicit access to Philips' proprietary service tools without a "key."

Zetta frames Philips as a bully—as a big company trying to stifle competition. Philips does not prohibit competition in servicing. To the contrary, Philips has established procedures that allow non-Philips persons to properly register for access to the systems and to certain service tools and documents (but not Philips' proprietary tools and data) to service its systems. Zetta chose not to register for authorized access. Instead, it chose to misuse confidential login credentials and trade secret information to bypass Philips' access controls to gain access to and use of Philips' proprietary service tools and data, going far beyond what would have been allowed had Zetta obtained lawful access to the system. By avoiding development overhead and instead stealing access to Philips' proprietary tools, Zetta underbids competition.

Finally, Zetta hints that Philips is overly litigious because it filed this action after negotiations broke down. Zetta left off that the negotiations broke down when Zetta unexpectedly walked away after the parties had devoted nearly four months of efforts to resolve

the matter. Zetta left Philips with no choice.

Zetta wants to sidestep the merits of the case. Zetta mischaracterizes the allegations as conclusory in an effort to escape liability. But the allegations clearly satisfy the notice pleading requirements of Rule 8(a) and give Zetta more than fair notice of the grounds upon which Philips' claims rest. Defendants' motion should be denied.

**I.      LEGAL STANDARD**

A complaint need only contain "a short and plain statement of the claim" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). "'Detailed factual allegations' are not required, but the plaintiff must allege facts that, when 'accepted as true … state a claim to relief that is plausible on its face.'" *Desmond v. Chicago Boxed Beef Distrib., Inc.*, 921 F. Supp. 2d 872, 878-79 (N.D. Ill. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Rule 8(a)(2) imposes "two easy-to-clear hurdles" that a complaint must satisfy in order to survive a motion to dismiss. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))) (internal citations and quotation marks omitted). First, the complaint must "describe the plaintiff's claims and the grounds supporting them in 'sufficient detail to give the defendants fair notice' of the claims alleged against them. This requires more than mere 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Desmond*, 921 F. Supp. 2d at 879 (quoting *Concentra*, 496 F.3d at 776). Second, the complaint must include factual allegations which "plausibly suggest a right to relief, raising that possibility above a speculative level." *Id.*

**II.     ARGUMENT**

        **A.      Philips Has Pled Viable CFAA Claims.**

            **1.      Philips Alleged Improper Access Under The CFAA.**

Philips alleges that Defendants violate §§ 1030(a)(2)(C)[1] and 1030(a)(4) of the CFAA.[2] To state a claim under either of these CFAA sections, a plaintiff must allege, among other things, improper access. *See* 18 U.S.C. § 1030(a)(2)(C) ("intentionally accesses a computer without authorization or exceeds authorized access"), § 1030(a)(4) ("knowingly and with the intent to defraud accesses a protected computer without authorization, or exceeds authorized access"). Philips alleges that Defendants intentionally and/or knowingly accessed Philips CSIP on the Systems in excess of its authorization or in excess of access that the Systems' owners had the rights to confer upon defendants. Am. Compl. (Dkt. 10), ¶62. Thus, Philips alleged the improper access required under these CFAA sections.

Defendants first argue for dismissal because UMMC authorized them to service its equipment. Mot. (Dkt. 19), 4-5. Defendants' argument fails because it ignores the pleadings. Philips does not allege that Zetta accessed *the Systems* without authorization in violation of the CFAA. Rather, Philips alleges that Defendants intentionally accessed *information* and *Philips' proprietary software* on the Systems without authorization, in excess of authorization, or in excess of access that the Systems' owners had the rights and ability to confer. Am. Compl., ¶¶62-63. Whether UMMC authorized Zetta to service the equipment is thus inconsequential.

Defendants also argue that the CFAA may be relevant if Defendants misappropriated a unique password, but because they misappropriated a confidential password used by multiple Philips employees, somehow that undoes Philips' CFAA claim. Mot., 5. Defendants' argument is irrelevant because Philips alleged that Defendants access the information in excess of their authorization. Am. Compl., ¶62. How they did so is irrelevant to the CFAA claim.

---

[1] As Defendants recognize, the Amended Complaint included a typo where it referenced § 1030(a)(6)(C). Mot. at 4 (citing Am. Comp. at ¶66). That paragraph should have referenced § 1030(a)(2)(C), which is consistent with the allegation in that paragraph that Defendants have exceeded their authorized levels of access. Am. Compl., ¶66.
[2] Philips withdraws its claims under 18 U.S.C. §§ 1030(a)(5)(C) and (a)(6)(A), but reserves the right to pursue these claims in the future if it discovers additional information through the course of discovery or other investigation.

- 3 -

Defendants next argue that the violation of private use conditions cannot be the basis for a claim under the CFAA. Mot., 5-6. This argument also fails to warrant dismissal because Philips separately alleged that Defendants access the information in excess of their authorization or in excess of the authorization the Systems' owners could confer. Am. Compl., ¶62.

Defendants' "use conditions" argument fails for the independent reason that Defendants forfeited any authorization to access the Systems when Defendants breached their duty of loyalty to UMMC. Philips protects its proprietary service tools by entering into contracts with its customers that prohibit their unauthorized access, and their granting others unauthorized access, to Philips' proprietary service tools. Am. Compl., ¶28. UMMC was contractually obligated to prevent others from accessing Philips' proprietary service tools installed on the System. Zetta's unlawful use of a backdoor to access Philips' proprietary service tools was thus adverse to UMMC's interests and would have terminated any general authorization UMMC provided.

For its "use restriction" argument, Defendants cite to cases in other circuits which have held that the CFAA does not extend to use restrictions. Mot., 5-6. Defendants acknowledge, however, that the Seventh Circuit has not adopted that approach.[3] Mot., 5. Indeed, Courts in the Seventh Circuit have found CFAA violations in fact patterns similar to those alleged here. *See, e.g., Int'l Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418, 420–21 (7th Cir. 2006) (while employee had authorization to use the laptop in a general sense, his authorization terminated when he decided to act adverse to his employer); *Lane v. Brocq*, 2016 WL 1271051, at *9 (N.D. Ill. Mar. 28, 2016) (accessing LLC's computer system for reasons that were adverse to LLC's interests adequately states a claim for "exceeding authorized use"); *TEKsystems, Inc. v. Modis,*

---

[3] Nor have most other circuits. *See, e.g., EF Cultural Travel v. Explorica, Inc.*, 274 F.3d 577 (1st Cir. 2001); *United States v. Teague*, 646 F.3d 1119 (8th Cir. 2011); *United States v. Rodriguez*, 628 F.3d 1258 (11th Cir. 2010); *United States v. John*, 597 F.3d 263 (5th Cir. 2010) (holding that an employee had exceeded authorized access where the policy of the Social Security administration was that personal information could only be obtained for business purposes, and the defendant accessed information for non-business purposes).

*Inc.*, 2008 WL 5155720 (N.D. Ill. Dec. 5, 2008) (defendant downloading confidential information after accepting position with competitor but before notifying prior employer supports CFAA claim because acceptance of the position terminated agency relationship). Defendants attempt to distinguish these cases because Zetta has no duty of loyalty to Philips. Mot., 6. But Defendants plausibly had a duty to UMMC. Defendants acted against UMMC's interests when they misappropriated trade secret information to gain illicit access to Philips' proprietary service tools and information installed on UMMC's Systems. For this additional reason, Defendants actions "exceeded authorized use" under the CFAA.

### 2. Philips Alleged Loss Under The CFAA.

The CFAA provides a private cause of action for a person "who suffers damage or loss by reason of a [CFAA] violation." 18 U.S.C. § 1030(g). Philips alleges that it incurred losses in excess of $5,000 in a one-year period related to investigating and responding to Defendants' conduct. Am. Compl., ¶68. Philips thus alleges facts plausibly establishing the "loss" requirement of a CFAA claim. *Navistar, Inc. v. New Baltimore Garage, Inc.,* 2012 WL 4338816, at *8 (N. D. Ill. Sept. 20, 2012) ("at a minimum, Plaintiffs have stated a CFAA claim by alleging that they incurred costs in investigating an alleged CFAA offense.")

Defendants complain that Philips has not pled a loss as required under the CFAA because, according to Defendants, Philips does not provide enough detail, such as an allegation that it hired an investigate firm at a cost greater than $5,000. Mot., 6-7. But Rule 8(a) does not require "detailed factual allegations." *Desmond,* 921 F. Supp. 2d at 878-79. Rather, it requires a plaintiff to allege facts that, when accepted as true, state a plausible claim for relief. *Id.* Because Philips' Amended Complaint satisfies the requirements of Rule 8(a), Defendants' argument fails.

Defendants also disagree with Philips' allegation, positing that "[t]here was nothing for

- 5 -

Philips to investigate" because Mr. Duncan admitted on a phone call the password and the method Defendants use to bypass security features. Mot., 7 (citing Am. Compl., ¶53). But Defendants dispute of the allegations does not mean that they violate Rule 8(a)'s requirements.

Defendants next gripe that "Philips does not allege any impairment or unavailability of data or interruption of service that could underlie any such investigation." Mot., 7. Defendants' complaint does not warrant dismissal, however, because recent cases in this Circuit have established that the loss requirement may be satisfied without regard to whether the investigation pertained to an actual disruption of service or impairment. *See, e.g., Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 2015 WL 7301245, at \*6 (W.D. Wis. Nov. 18, 2015) (denying motion to dismiss where plaintiff alleged "loss" associated with the costs of an investigation even in the absence of actual damage to the computer system); *Pascal Pour Elle, Ltd. v. Jin*, 75 F. Supp. 3d 782, 791 (N.D. Ill. 2014) (allowing a CFAA claim to proceed where plaintiff alleged that it paid $5,000 in "investigation and security assessment costs associated with the intrusion" notwithstanding a lack of allegations regarding damage or disruption to the system).

This Court's denial of a motion to dismiss in *Lane v. Brocq* is instructive. In that case, the plaintiff alleged that it had "suffered losses in excess of $5,000 since May 11, 2015, to date, to investigate the extent of [Defendants'] breach [and] to re-secure their computer systems." 2016 WL 1271051 at \*11. The Court concluded that this allegation was sufficient to satisfy the loss requirement at the motion to dismiss stage, finding that "courts in this District have permitted CFAA claims to proceed when the plaintiff has incurred costs due to an investigation, without regard to whether the investigation pertained to an actual disruption of service or impairment to the plaintiff's data." *Id.* Similarly here, Philips has pled that "Defendants have caused Plaintiffs to incur losses in excess of $5,000.00 in value in a one-year period related to

- 6 -

the investigation of and cost of responding to the conduct set forth in the preceding paragraphs of this Complaint." Am. Compl., ¶ 68. This allegation is sufficient to satisfy the loss requirement at the pleading stage, thus Defendants' argument as to this element of the CFAA claim fails.

### 3. Philips Alleged An Intent To Defraud.

Defendants argue that CFAA § 1030(a)(4) "requires an intent to defraud, but Philips has not alleged any such intent" without further explanation. Mot., 7. Defendants' argument again fails when Philips' allegations are properly considered.

A violation of § 1030(a)(4) occurs when a person knowingly and *with the intent to defraud* accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains something of value. "[I]ntent to defraud means that the defendant acted willfully and with specific intent to deceive or cheat, usually for the purpose of getting financial gain for himself or causing financial loss to another." *Fidlar Tech. v. LPS Real Estate Data Sol., Inc.*, 810 F.3d 1075, 1079 (7th Cir. 2016) (quoting *United States v. Pust*, 798 F.3d 597, 600 (7th Cir. 2015)). Philips alleges facts that, if proven, establish that Defendants acted with specific intent to deceive or cheat, and for the purpose of financial gain by offering services using Philips' proprietary service tools. *See, e.g.*, Am. Compl., ¶33 (Zetta offers competing services "by hiring former Philips employees and by improperly using Philips confidential and proprietary information…and by encouraging those former Philips employees to utilize the same."), ¶¶47-49 (Zetta employee used knowledge from prior employment with Philips to login and bypass access controls to provide services), ¶50 ("This intentional and knowing use of Philips' confidential and proprietary information" permitted Defendants "to actively and unlawfully bypass the access-protection" to perform unauthorized servicing). Thus, Philips states a claim under § 1030(a)(4).

### B. Philips Has Pled A Viable Copyright Infringement Claim.

Defendants' arguments challenging Philips' copyright infringement claim fare no better. To successfully plead a claim for copyright infringement, a plaintiff must establish two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Beasley v. John Wiley & Sons, Inc.*, 56 F. Supp. 3d 937, 940 (N.D. Ill. 2014). Because Philips has alleged facts that establish both required elements, Defendants' arguments fail.

### 1. Philips CSIP Software Is A Copyrighted Work.

Defendants allege that Philips does not identify what copyrighted work was infringed. Mot., 8-9. In support, Defendants argue that Philips does not allege access to the source code that is listed on the Certificates of Registration. Mot., 8. This argument fails because Philips explicitly alleges that the copyrighted work at issue is "Philips CSIP software for the Brilliance system" and that this work was registered with the United States Copyright Office. *See* Am. Compl., ¶72, Exhibit D. Philips further alleges that Defendants accessed "Philips CSIP software" at the University of Maryland Medical Center ("UMMC") and at other sites serviced by Defendants. *See, e.g.*, *Id*. ¶¶46-47, 41-53, 55-56. The source code listed on the certificates of registration is thus the "Philips CSIP software" that Phillips alleges to be infringed. *Id*., ¶72.

### 2. Philips Alleged An Infringing Act.

Defendants also argue that Philips' copyright claim fails because the Complaint does not allege copying of the CSIP program or that Defendants created a derivative work from it. Mot., 8. Once one understands that "Philips CSIP software" is the copyrighted work, Defendants' argument unravels. Philips alleges in its Amended Complaint that Zetta used "Philips CSIP software." *See, e.g.* Am. Compl., ¶¶47, 50, 54, 75. Use of software creates a copy of the software in the computer's Random Access Memory. *See, e.g., FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, 2008 WL 717792, at *5 (N.D. Ill. Mar. 17, 2008) ("[A] user reproduces a program stored in his computer's hard drive merely by launching that program, thereby causing

- 8 -

the computer to copy it to Random Access Memory."); *see also Datacarrier S.A. v. WOCCU Servs. Grp., Inc.*, 221 F. Supp. 3d 1078, 1086 (W.D. Wisc. 2016) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 519 (9th Cir. 1993) ("[I]t is generally accepted that the loading of software into a computer constitutes the creation of a copy under the Copyright Act.")); 2-8 Nimmer on Copyright § 8.08 (2007). Thus, Philips has alleged an infringing act.

### 3. The Registration Covers The Copied Versions of Philips CSIP.

Defendants also argue that Philips has failed to allege that the registered versions of Philips CSIP identified in Philips' Amended Complaint were on UMMC equipment, or that Defendants accessed any of these three versions. Mot., 9. Defendants state that because the Brilliance 4.1.6 program was not published until July 10, 2016, Philips has not alleged that Defendants accessed this version because it is purportedly after the infringing act. *Id.* The facts as pled in the Amended Complaint demonstrate otherwise.

Philips explicitly alleges that the copyrighted work that was accessed by Defendants on UMMC equipment is "Philips CSIP" and that it was this "Philips CSIP" work that was registered with the United States Copyright Office in three versions. Am. Comp., ¶¶ 46, 72, Exhibit D. With regard to timing, Philips has alleged that Defendants' conduct is ongoing and continuing. Am. Compl., ¶ 52 ("While the conduct set forth above occurred at the [UMMC], Defendants – upon information and belief – *engage in* the same improper and unauthorized conduct at sites they service nationwide.") (emphasis added); *see id.*, ¶ 60 ("Zetta's conduct … is not limited in time to the above-identified May 2015 and/or January 2016 events … Zetta's conduct … is instead, representative of widespread and *ongoing conduct*.") (emphasis added); *see id.*, ¶ 99 ("Defendants' conduct, and *continuing use* of the trade secrets and proprietary and confidential information of Philips") (emphasis added). Philips has alleged that this conduct has been ongoing since at least May of 2015. *See id.* Further, Philips identified two other copyright

registrations for the "Philips CSIP" that were published in 2013 that Defendants do not dispute were published before the time frame of the infringing acts. Philips has thus pled facts demonstrating copying of the registered versions of its "Philips CSIP" software.[4]

        **C.     Philips Has Pled A Viable DMCA Claim.**

The DMCA provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1). To "circumvent a technological measure" means to "descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). Philips alleged that Mr. Duncan, a Zetta employee, accessed copyrighted works by doing two things. First, he used an unauthorized password that he learned through his former employment with Philips. Am. Compl., ¶47. Second, he "bypass[ed] and circumvent[ed] additional access-control measures by using and exploiting (i) functionalities within the System that would not have been knowable to Mr. Duncan had he gained access to the System via authorized methods and (ii) knowledge of trade secrets and other proprietary knowledge that became known to him through his former employment with Philips." *Id; see also* ¶53 (Zetta employee admitted to "utilizing an unauthorized password" and "subsequently bypassing and circumventing other security features" "as a routine means of accessing diagnostic tools maintenance logs, and other information and functionalities"). By circumventing software security measures, Defendants accessed certain service menus beyond the level of access the unauthorized login credentials would otherwise provide and beyond authorized levels of access. *Id*., ¶¶48, 53. Philips therefore alleges facts that plausibly established circumvention of a technological measure under the DMCA.

---

[4] Philips withdraws its contributory infringement claim, but reserves the right to pursue such a claim in the future if Philips discovers additional information through the course of discovery or other investigation.

- 10 -

Defendants argue that "the only specific allegedly circumventive activity described in the complaint is Defendant's alleged 'utilizing an unauthorized password.'" Mot., 9 (citing Am. Compl., ¶¶82, 53). Not so. Philips alleges that *after* using the unauthorized password, Defendants *subsequently* circumvent technological measures to gain access to information and software tools. Am. Compl., ¶¶47-48, 53, 85. Therefore, Defendants' reliance on this Court's *Navistar* decision is misplaced. Mot., 9-10 (citing *Navistar,* 2012 WL 4338816, at *5 (using an unauthorized password does not constitute "circumvention" under the DMCA").

Defendants then reverse course and acknowledge that Philips alleges that Defendants bypass non-password security measures, but still urge the Court to dismiss the claim because Philips purportedly "gives no details of those unsupported allegations." Mot., 10. Rule 8(a), however, only requires Philips to plead facts that, if accepted as true, state a plausible claim to relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Philips not only alleges that Defendants circumvent technological measures, but its pleadings identify the May 2015 phone call in which Mr. Duncan explained the steps Defendants take to subsequently circumvent Philips' access controls after logging in with the unauthorized password. Am. Compl., ¶53. Philips' allegations therefore provide Defendants with fair notice of the grounds upon which Philips' DMCA claims rest and satisfy the requirements of Rule 8(a).

### D. Philips Has Pled Viable Federal And State Trade Secret Claims.

#### 1. Philips Alleged Misappropriation After DTSA Enactment.

Defendants argue that Philips' DTSA claim should be dismissed because the DTSA is not applied retroactively and Philips purportedly has not alleged any misappropriation or use of its trade secrets after the DTSA's enactment. Mot., 10-11. Defendants' argument fails, however, because Philips alleged ongoing misappropriation. *See* Am. Compl., ¶52 ("Defendants … *engage in* the same improper and unauthorized conduct at sites they service nationwide.")

(emphasis added), ¶60 (alleging "widespread and *ongoing conduct*.") (emphasis added), ¶ 99 ("Defendants' conduct, and *continuing use* of the trade secrets") (emphasis added). By alleging ongoing conduct, Philips thus has pled a plausible DTSA claim.

"Other district courts have analyzed the applicability of the DTSA to misappropriations that occurred before the DTSA was enacted. These courts have all held that the DTSA applies to misappropriations that began prior to the DTSA's enactment if the misappropriation continues to occur after the enactment date." *Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, 2017 WL 1105648, at *4 (E.D. Pa. Mar. 24, 2017) (citing *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (claim that began pre-enactment was viable because the complaint alleged that the defendants "continue[d] to use" the trade secrets) (quoting 18 U.S.C. § 1839(5)(B)); *see also Adams Arms, LLC v. Unified Weapon Sys., Inc.*, 2016 WL 5391394, at *5–7 (M.D. Fla. Sept. 27, 2016) (same); *Allstate Ins. Co. v. Rote*, 2016 WL 4191015, at *1–5 (D. Or. Aug. 7, 2016) (granting relief in DTSA case where the defendant remained in possession of trade secrets after enactment); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1076–78 (N.D. Cal. 2016) (same)). Similarly here, Philips has pled a plausible claim that Defendants ongoing misappropriation violates the DTSA.

### 2. Philips Alleged The Existence Of A Trade Secret.

Defendants argue that Philips has not met the pleading standard required for trade secret claims in Illinois because it has not identified specific secrets. Mot., 11-12. Defendants' argument fails because they again seek more detail than is required at the pleading stage.

While "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated," *Composite Marine Propellers, Inc. v. Van Der Woude,* 962 F.2d 1263, 1266 (7th Cir. 1992), trade secrets "need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result

in public disclosure of the purported trade secrets." *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001) (internal citation omitted).

Here, Philips has met the notice pleading requirement by alleging that its CSIP contains and encompasses trade secrets. Am. Compl., ¶38. Philips goes further and alleges that the "Philips CSIP software and access control systems, including passwords and user IDs, contain and are trade secrets because Philips engaged in reasonable measures to maintain their secrecy." *Id*, ¶93. Reasonable measures Philips used to protect its CSIP include password protection, access control systems, written notices, and contracts with both employees and customers. *Id*, ¶¶28, 39, 42-44, 47, 53, 93. Reasonable measures Philips used to protect its access control systems include contracts with employees and third-parties and written notices. *Id*, ¶¶39, 42-44. These allegations identify trade secrets and efforts to maintain their confidentiality in more than just general terms, and are sufficient under federal pleadings standards.

Notably, the trade secrets Defendants misappropriated here relate to the access controls for Philips' software and information an ex-Philips employee provided Zetta to allow it to circumvent those access controls. Defendants' demand for detailed factual allegations beyond the requirements of Rule 8(a) should be rejected because it would risk the public disclosure of highly sensitive information. *See AutoMed,* 160 F. Supp. 2d at 921 (trade secrets "need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets.")

Whether a plaintiff adequately alleges the existence of a trade secret is a fact intensive analysis, but Courts have found allegations in more general terms than those here to be sufficient at the pleading stage. *See, e.g., GoHealth, LLC v. Simpson*, 2013 WL 6183024, at *12 (N.D. Ill. Nov. 26, 2013) (identification of trade secret as processes, systems, and technology that allowed

call center to respond quickly was adequate to state a claim); *Papa John's Int'l v. Rezko*, 446 F. Supp. 2d 801, 812 (N.D. Ill. 2006) (claim can proceed although it is "unclear which trade secrets of the 'Papa John's System' were misappropriated"); *Labor Ready, Inc. v. Williams Staffing LLC*, 149 F. Supp. 2d 398, 412 (N.D. Ill. 2001) (claim sufficient that alleged that former employees stole information that plaintiff kept secret through restrictive covenants in employment contracts, among other means). Here, the pleadings more clearly satisfy Rule 8(a)'s notice function.

Defendants further argue that Philips' user IDs and passwords are not trade secrets and that Philips "provides no evidence" that customers had an obligation to keep passwords secret. Mot., 12. Defendants' argument cannot warrant dismissal because Philips' alleged trade secret misappropriation beyond Defendants' unauthorized use of user IDs and passwords. Am. Compl., ¶¶28, 39, 42-44, 47, 53, 93. Further, Philips's allegations plausibly establish that it took reasonable steps to maintain the secrecy of the user IDs and passwords and other access controls. Am. Compl., ¶¶28, 39, 42-44, 93. Rule 8(a) does not require Philips to prove its case in its complaint. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.,* 342 F.3d 714, 723 (7th Cir. 2003) ("The existence of a trade secret is ordinarily a question of fact … best resolved by a fact finder after full presentation of evidence from each side.") (citation and internal quotation omitted).

### E. Philips Has Standing To Assert The Claims In The Complaint.

Defendants argue for dismissal of Philips' claims against Mr. Duncan for breach of contract and against Zetta for tortious interference because the contracting entity, Philips Electronics North America Corporation, was purportedly not named as a plaintiff in the Complaint. Mot., 12-13. Philips Electronics North America Corporation was converted to Philips North America LLC. *See* Am. Compl., ¶ 11[5]; *see also* Exhibit A to attached Declaration

---

[5] Paragraph 11 of the Amended Complaint contains a typo: "Philips North America Corporation" should read "Philips Electronics North America Corporation."

- 14 -

of James Hultquist. Accordingly, Philips North America LLC has standing and Defendants' arguments for dismissal of the tortious interference and breach of contract claims fail.

### F. Philips' Unfair Competition Claim Is Not Preempted.

Defendants argue for dismissal of Philips' unfair competition claim "to the extent that" Philips' claim is based on the same underlying conduct alleged in its trade secret claim. Mot., 14. Philips' unfair competition claim is not preempted for at least the reason that it is based on Zetta holding itself out as having expertise and capabilities that it does not have. Am. Compl. ¶¶130-131. Indeed, by couching their argument with "to the extent" (Mot., 14), Defendants tacitly recognize that Philips' trade secret claims do not preempt its unfair competition claim. *See U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601 (N.D. Ill. 2007) (unfair competition claim was not preempted to the extent that it was not based on trade secrets); *Labor Ready, Inc.*, 149 F. Supp. 2d at 398 (unfair competition arguments not preempted to the extent they do not rely on misappropriation of trade secrets). Because Philips unfair competition claim includes allegations beyond those supporting Philips' trade secret claims, Philips' unfair competition claim is not preempted.

Defendants also assert that Philips' allegation that they "misrepresent their rights" is "wholly unsupported by facts" and fails to meet federal pleading standards. Mot., 14. Rule 8(a) only requires that Philips plead facts that, if accepted as true, state a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. The allegations in Philips' Amended Complaint meet this standard and, thus, Defendants' motion should be denied.

### III. CONCLUSION

For the foregoing reasons, Philips respectfully requests that this Court deny Defendants' Motion. Alternatively, Philips requests leave to amend its Complaint.

By: /s/ James T. Hultquist

James T. Hultquist (6204320)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Tel: (312) 207-1000
Fax: (312) 207-6400
Email: jhultquist@reedsmith.com

Kirsten R Rydstrom
Pa. ID 76549 (*pro hac vice*)
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Tel.: (412) 288-3131
Fax: (412) 288-3063
Email: krydstrom@reedsmith.com

Gerard M. Donovan
DC Bar 997156 (*pro hac vice pending*)
REED SMITH LLP
1301 K Street, N.W., Suite 1000 – East Tower
Washington, DC 20005
Tel: (202) 414-9224
Fax: (202) 414-9299
Email: gdonovan@reedsmith.com

*Counsel for Plaintiffs*

Dated: August 28, 2017

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing is being filed on August 28, 2017 using the Court's CM/ECF system, which will send a Notice of Electronic Filing via electronic mail to all counsel of record in this matter.

                    Respectfully submitted,

                    By: /s/ James T. Hultquist

                    James T. Hultquist (6204320)
                    REED SMITH LLP
                    10 South Wacker Drive, 40th Floor
                    Chicago, Illinois 60606
                    Tel:      (312) 207-1000
                    Fax:     (312) 207-6400
                    Email:   jhultquist@reedsmith.com

                    *Counsel for Plaintiffs*